No. 26-1491

# In the
# United States Court of
# Appeals for the Fourth
# Circuit

HARRY SMITH,

*Plaintiff-Appellant,*

v.

INFORMDATA, LLC, formerly known as WHOLESALE SCREENING SOLUTIONS, LLC,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, HON. ROSSIE D. ALSTON, JR. (NO. 25-CV-00826)

## PLAINTIFF-APPELLANT HARRY SMITH'S
## OPENING BRIEF

Susan Mary Rotkis
**CONSUMER JUSTICE LAW FIRM**
2290 East Speedway Boulevard
Tucson, AZ 85719
T: (602) 807-1504
E: srotkis@consumerjustice.com

*Counsel for Plaintiff-Appellant
Harry Smith*

i

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __26-1491__        Caption: __John Doe v. InfomData, LLC f/k/a Wholesale Screening LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__John Doe__
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?   ☐ YES ☑ NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
     If yes, identify all such owners:

12/01/2019 SCC

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?        ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)        ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?        ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Susan Mary Rotkis                          Date:        5/7/2026

Counsel for: Appellant

- 2 -
iii

**Print to PDF for Filing**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**......................................................................v

**STATEMENT OF JURISDICTION**.....................................................1

**INTRODUCTION**..................................................................................3

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**.......7

**STATEMENT OF THE CASE**.............................................................8

   **I.  Factual Background**.................................................................8

      A.   *All of Plaintiff's criminal records, including records of arrest, were pardoned and expunged.*........................................................8

      B.   *Delaware law expressly prohibits any person from disclosing the information contained in expunged criminal records.*.................9

      C.   *InformData published a report that provided Plaintiff's prospective employer with information from Plaintiff's expunged criminal records.*......................................................................10

      D.   *GoShare rescinded its job offer, and Plaintiff suffered a variety of economic and emotional distress injuries.*...................................12

   **II.   Procedural History**..............................................................13

      A.   *Plaintiff asserted claims against InformData under the FCRA and the common law of negligence and defamation.*.......................13

      B.   *InformData moved to dismiss Plaintiff's claims.*.....................15

      C.   *The district court dismissed Plaintiff's FCRA and common-law claims.*....................................................................................17

**SUMMARY OF THE ARGUMENT**...................................................22

**ARGUMENT**.......................................................................................26

   **Standard of Review**..................................................................26

   **I.   The district court erred by blending the requirements of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681c(a)(5) because the two**

sections impose independent limits on consumer reporting, and courts have held that information can still be inaccurate for the purposes of § 1681e(b) if it does not violate § 1681c(a)(5)...................................................................27

A. *To state a plausible claim under § 1681e(b), a plaintiff must allege facts that will, among other things, permit a finding that a CRA's files or reports included inaccurate information*....................27

B. *Information is "inaccurate" for the purposes of the FCRA when it is patently incorrect or includes or omits facts that create a misleading impression about the consumer.*..........................................28

C. *Plaintiff alleged facts that would permit a finding that InformData's reporting was inaccurate when it included information from records that had been expunged about offenses for which he was pardoned.*.................................................................30

D. *The district court committed multiple errors in its analysis of Plaintiff's allegations misapplying the law and failing to construe Plaintiff's allegations in the most favorable light.*.............................34

II. **The district court erred by ruling that Delaware's economic loss doctrine precluded Plaintiff's negligence claim because Plaintiff alleged non-economic losses, including various losses associated with emotional distress.** ...................47

III. **The district court erred when ruling that Plaintiff failed to allege the kind of false statement that can give rise to a defamation claim. Plaintiff alleged that InformData's reporting included a substantially false statement because it represented his expunged criminal record as though it were a current public record.** ..................................................................53

**CONCLUSION AND RELIEF REQUESTED** .................................60

# TABLE OF AUTHORITIES

**Cases**

*Aldaco v. RentGrow, Inc.*, 921 F.3d 685 (7th Cir. 2018).........................43

*Bahr v. Statesman Journal Co.*, 624 P.2d 664 (Or. Ct. App. 1981)........57

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ...........................26

*Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299 (D. Del. 1994) .....54

*Brasby v. Morris*, No. C.A. 05C-10-022-RFS, 2007 WL 949485 (Del. Super. Ct. Mar. 29, 2007) ......................................................... 49, 50

*Bugoni v. Emp. Background Investigations, Inc.*, No. CV SAG-20-1133, 2022 WL 888434 (D. Md. Mar. 25, 2022) ..........................................39

*Council of Unit Owners of Sea Colony E., Phases III, IV, VI & VII Condo., On Behalf of Ass'n of Owners v. Carl M. Freeman Assocs., Inc.*, No. CIV. A. 86C-AU-49, 1990 WL 177632 (Del. Super. Ct. Oct. 16, 1990) ....................................................................................49

*Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409 (4th Cir. 2001) 3, 27, 28, 29

DEL. CODE ANN., tit. 11, § 4376 (West) .........................................10, 59

*Doe v. Bayhealth Med. Ctr., Inc.*, No. N24C-09-002 FJJ, 2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025) ...............................................48

*Edelstein v. Goldstein*, No. CIV.A.09C-05-034DCS, 2011 WL 721490, at *7 (Del. Super. Ct. Mar. 1, 2011) ......................................................48

*Franks v. Ross*, 313 F.3d 184 (4th Cir. 2002) ......................................26

*Fryfogle v. First Nat. Bank of Greencastle*, No. CIV. 6:07CV00035, 2009 WL 700161 (W.D. Va. Mar. 17, 2009) ...............................................52

*G.D. v. Kenny*, 15 A.3d 300 (N.J. 2011)................................................57

*Gonzalez v. Avon Prod., Inc.*, 609 F.Supp. 1555 (D.Del.1985)................55

*Guthrie v. PHH Morg. Corp.*, 79 F.4th 328 (4th Cir. 2023)....................46

*Hammock v. Watts*, 146 F.4th 349 (4th Cir. 2025) .....................26, 38, 53

*Holmes v. The News Journal Co.*, No. CV N13C-11-136 MMJ, 2015 WL 1893150 (Del. Super. Ct. Apr. 20, 2015) ...........................................55

*Lueckenbach v. Horizon Mississippi Publ'ns, Inc.*, 2017 WL 473903 (N.D. Miss. Feb. 3, 2017) ................................................................ 57

*Marcucilli v. Boardwalk Builders, Inc.*, No. CIV. A. 99C-02-007, 1999 WL 1568612 (Del. Super. Ct. Dec. 22, 1999) ..................................... 49

*McKenna v. Terminex Int'l Co.*, No. CIV.A. 04C-02-022RBY, 2006 WL 1229674 (Del. Super. Ct. Mar. 13, 2006) .................................... 49, 50

*Obabueki v. Int'l Bus. Mach. Corp.*, 145 F. Supp. 2d 371 (S.D.N.Y. 2001) ........................................................................................... 33, 36

*Page v. Oath Inc.*, 270 A.3d 833 (Del. 2022). ..................................... 55

*Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR, 2001 WL 641737 (D. Del. May 24, 2001) ......................................................... 48

*Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007) ........ 29

*Rhodes v. First Advantage Background Servs. Corp.*, 722 F. Supp. 3d 1274 (M.D. Fla. 2024) ............................................................... 41, 42

*Rhodes v. First Advantage Background Servs. Corp.*, No. 24-11005, 2024 WL 4615775 (11th Cir. Oct. 30, 2024) .................................... passim

*Roberts v. Carter-Young, Inc.*, 131 F.4th 241 (4th Cir. 2025) ......... passim

*Saunders v. Branch Banking And Tr. Co. of Va.*, 526 F.3d 142 (4th Cir. 2008) ............................................................................. passim

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ............................................ 27

*Sepulvado v. CSC Credit Servs.*, 158 F.3d 890 (5th Cir.1998) ............... 29

*State v. Fletcher*, 974 A.2d 188 (2009) .............................................. 59

*United States ex rel. Doe v. Credit Suisse AG*, 117 F.4th 155 (4th Cir. 2024) ................................................................................. 28

*Watson v. Caruso*, 424 F. Supp. 3d 231 (D. Conn. 2019) ................. 32, 36

**Statutes**

15 U.S.C. § 1681 ......................................................................... 1, 3

15 U.S.C. § 1681c(a)(5) ............................................................ passim

15 U.S.C. § 1681e(b) ............................................................... passim

15 U.S.C. § 1681p ........................................................................... 1

28 U.S.C. § 1291 ............................................................................. 2

28 U.S.C. § 1331 ............................................................................. 1

28 U.S.C. § 1332 ...................................................................1
28 U.S.C. § 1367(a) .............................................................1
9 U.S.C. § 3 ..........................................................................1
9 U.S.C. § 4 ..........................................................................1
DEL. CODE ANN., tit. 10, § 1001 (West) ...............................59
DEL. CODE ANN., tit. 11, § 4371 (West) ...........................59, 60
DEL. CODE. ANN. tit. 11, § 4372 (West) ..........................8, 9, 42
DEL. CODE. ANN. tit. 11, § 4376(a)(1) (West) .......................10

## Other Authorities

116 Cong. Rec. 36570 (1970) ................................................3
CFPB, *Fair Credit Reporting; Background Screening*, Federal Register, 2024-00788, Jan. 23, 2024...............................................33
RESTATEMENT (SECOND) OF TORTS, § 558 (1977) ....................54

## Rules

Fed. R. App. P. 4(a)(1)(A) ....................................................2
Fed. R. Civ. P. 12(b)(6) .................................................. passim
Fed. R. Civ. P. 8(a)(2) ..........................................................26

# STATEMENT OF JURISDICTION

On May 13, 2025, Plaintiff-Appellant Harry Smith ("Mr. Smith" or "Plaintiff") filed a Complaint [Dkt. No. 1], against Defendant-Appellee InformData, LLC, f/k/a Wholesale Screening Solutions, LLC ("InformData"). Both Plaintiff's Complaint and his subsequent First Amended Complaint [Dkt. No. 43], asserted a cause of action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and, in the alternative, under the common law of negligence and defamation. Consequently, the district court had jurisdiction of this case under 15 U.S.C. § 1681p, 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a). In the alternative, because Plaintiff is a citizen of Delaware and InformData is a corporate citizen of Virginia, the district court also had jurisdiction under 28 U.S.C. § 1332.

InformData responded to Plaintiff's Complaint by filing a Motion to Compel Arbitration or for Dismissal [Dkt. No. 13] under 9 U.S.C. §§ 3 & 4 and Fed. R. Civ. P. 12(b)(6); and it renewed that motion after the filing of Plaintiff's First Amended Complaint [Dkt. No. 43]. In a Memorandum Opinion and Order [Dkt. No. 51], entered on March 11, 2026, the district

court denied InformData's request to compel arbitration, but it granted its request to dismiss Plaintiff's FCRA and common-law claims.

Plaintiff filed his Notice of Appeal [Dkt. No. 52] in the district court on April 6, 2026, making it timely under Fed. R. App. P. 4(a)(1)(A). Because Plaintiff timely appealed from a final order of the district court, this Court has jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION

The district court dismissed Plaintiff's claims because it failed to recognize and apply principles about the regulation of consumer reporting, which this Court established a quarter of a century ago. In *Dalton v. Cap. Assoc. Indus., Inc.*, this Court recognized that the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), reflects Congress' intention to prevent about "abuses in the consumer reporting industry," which include the reporting of "inaccurate information that was adversely affecting the ability of individuals to obtain employment." 257 F.3d 409, 414 (4th Cir. 2001). This Court also recognized that some of the worst abuses arise when a consumer's "'life and character [are] reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause.'" *Id.* (quoting 116 Cong. Rec. 36570 (1970)). Here, Mr. Smith alleged facts showing how Defendant-Appellee InformData, LLC, f/k/a Wholesale Screening Solutions, LLC ("InformData") harmed his reputation, impaired his employment prospects, and humiliated him because it blindly relied upon automated processes to report false and misleading information about his criminal history. But the district court

dismissed Mr. Smith's claims under Fed. R. 12(b)(6) because it failed to construe the allegations in the most favorable light to Mr. Smith and then, it misapplied the law.

According to Plaintiff's allegations, the Governor of Delaware pardoned Plaintiff in 2020 for some criminal offenses that were more than ten years old, and, a year later, a Delaware court expunged the record of those offenses pursuant to a Delaware statute that makes it unlawful for any person to disclose the information that underlies an expunged criminal record. When Plaintiff was subject to a criminal background check in connection with an employment application, InformData published a report about Plaintiff that referenced information about his expunged offenses and omitted any information about his pardon or expungement, creating the patently false impression that Delaware maintained a record of those offenses when it did not. InformData failed to recognize that Delaware had erased Plaintiff's criminal record because its "stolid and unthinking" reporting method eschews any examination of the current public record, relying instead upon automated processes that look exclusively stale information held in private databases. Plaintiff specifically alleged that InformData's

reporting amounted to, among other things, "a false statement that [his] criminal records *were not* expunged." JA 8, ¶ 102 (emphasis in original).

The district court dismissed Plaintiff's claim, erroneously concluding that these allegations did not identify any actionable inaccuracies under either the FCRA or Delaware common law. With respect to the FCRA, the district court made this error because it misread Plaintiff's allegations to set forth a theory that they did not actually contain: that it was inaccurate to report the "historical fact" that he had once been convicted of a crime. In this respect, the district court simply ignored the fact that Plaintiff specifically alleged that InformData made carelessly inaccurate statements about the contents of the official record at the time of its reporting. In addition, the district court distorted the FCRA's standard of accuracy, effectively holding that the statute gives CRAs a license to issue reports that pretend that expungements and pardons never happened. In ruling on Plaintiff's common-law claims, the district court also applied Delaware's economic loss doctrine to Plaintiff's claims even though he had unequivocally alleged a range of non-economic losses, including reputational harm and accompanying emotional distress.

Contrary to the district court's conclusions, both the FCRA and the common law prohibit InformData from falsely stating that Delaware's official public records currently identify Plaintiff as a criminal when those records do not. And Plaintiff alleged facts to prove that InformData violated this prohibition, even if the district court did not pay attention to them. Consequently, Plaintiff asks this Court to reverse the district court's order granting InformData's Motion to Dismiss and to remand the case with instructions that the reporting of consumer information containing an expunged record is inaccurate.

# STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.     Did the district court err by blending the requirements of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681c(a)(5) because the two sections impose independent limits on consumer reporting, and courts have held that information can still be inaccurate for the purposes of § 1681e(b) if it does not violate § 1681c(a)(5)?

II.     Did the district court err by ruling that Delaware's economic loss doctrine precluded Plaintiff's negligence claim because Plaintiff alleged non-economic losses, including various losses associated with emotional distress?

III.     Did the district court err when ruling that Plaintiff failed to allege the kind of false statement that can give rise to a defamation claim. Plaintiff alleged that InformData's reporting included a substantially false statement because it represented his expunged criminal record as though it were a current public record?

IV.     Did the district court abuse its discretion by denying the Plaintiff's motion to proceed in pseudonym?

## <u>STATEMENT OF THE CASE</u>

## I.      Factual Background

A.      *All of Plaintiff's criminal records, including records of arrest, were pardoned and expunged.*

Plaintiff had been convicted of certain criminal offenses in Delaware. JA 8, ¶ 51. In February 2020, when those convictions were more than a decade old, he applied to the Delaware Board of Pardons, seeking a pardon for all of his convictions. *Id*. The Board granted Plaintiff's application and recommended that the governor give him a blanket pardon. *Id*. Governor John Carney granted that blanket pardon on May 26, 2020. *Id*. Shortly after receiving the pardon, Plaintiff applied for the judicial expungement of his convictions, pursuant to DEL. CODE. ANN. tit. 11, § 4372 (West). JA 8, ¶¶ 54-55 . Plaintiff's application for an expungement was granted on March 3, 2021. *Id*.

Delaware law specifically provides that an expungement erases convictions from the public record. According to § 4372(e)(1), when a court issues an expungement order:

"all the criminal records relating to a case specified in the order must, within 60 days of the order, be ***removed from the court's files*** and placed in the control of the Supervisor of the

State Bureau of Identification or otherwise segregated and kept in a manner that ensures that ***they are not open to public inspection or disclosure***."

*Id.* (quoting DEL. CODE. ANN. tit. 11, § 4372(e)(1) (West)) (emphasis added).

B. *Delaware law expressly prohibits any person from disclosing the information contained in expunged criminal records.*

Delaware law also provides that, once a conviction has been expunged, it is unlawful for any private party to make ***any disclosure*** the information contained in the conviction record unless a court has specifically authorized the disclosure. Section 4372 provides that the Supervisor "shall ensure that the records or information contained in the records are not released for any reason." JA 8, ¶¶ 55-56 (quoting DEL. CODE. ANN. tit. 11, § 4372(e)(1) (West)). Although expunged records can be made available under strictly specified circumstances to law-enforcement officers and agencies, Delaware statutes expressly prohibit any other person from disclosing information that is contained in an expunged criminal record. Specifically, Delaware statutes provide that "'it is unlawful for any person having or acquiring access to an expunged court or law-enforcement agency record to open or review it or to disclose

9

to another person any information from it without an order from the court which ordered the record expunged.'" *Id*. (quoting DEL. CODE. ANN. tit. 11, § 4376(a)(1) (West)).

 C. *InformData published a report that provided Plaintiff's prospective employer with information from Plaintiff's expunged criminal records.*

In March 2023, Plaintiff applied for full-time employment with GoShare, Inc. JA 8, ¶ 57. After an interview, he was offered a job and accepted it. *Id*. Before starting employment, however, GoShare required that Plaintiff consent to and pass a background check. *Id*.

GoShare had a contract with Turn Technologies, Inc. ("Turn"), under which Turn would provide GoShare with background check reports, including criminal history information. JA 8, ¶¶ 63-64. Turn subcontracts some of its background check work to InformData, and it was InformData that conducted Plaintiff's background check and compiled the background check report that Turn provided to GoShare. *Id*.

Like many other background check companies, InformData principally relies on automated processes to conduct background checks and to produce its reports. JA 8, 8,¶¶ 42-50, 74. InformData collects criminal record information that is available over the internet and

assembles that information into a database, which it uses to conduct its background checks. JA 8, ¶¶ 42-49. According to its own website, InformData relies upon "'intelligent systems that "scrape" county-level data for criminal information, replacing human researchers with intelligent bots (which we call "agents.").'" *Id.* (citing and quoting InformData's website).

The automated processes used by InformData and its competitors omit quality-control procedures that are crucial to assuring the accuracy of their criminal history reporting. *See id.* Most notably, these processes do not compare the "scraped" information in the established databases with the current contents of official public records. *Id.* Although this omission of quality-control procedures reduces the production costs of background check reports, these automated processes often generate reports containing information that has been removed from official public records or that has never actually been in those records. *Id.*

Plaintiff alleged that InformData used outdated information from his expunged records to compile its background check report about him and that Turn forwarded InformData's report to GoShare. JA 8, ¶¶ 75-84. Plaintiff also alleged that InformData obtained this information

because it relied upon data that was scraped from the internet before Plaintiff received his pardon and expungement and because InformData failed to follow reasonable quality-control procedures to confirm that the reported information was actually still included in public records. *Id.* Plaintiff specifically alleged that, if InformData had supplemented its automated processes by reviewing the current Delaware public records before publishing its report, "it would have discovered that there no reportable criminal records related to Plaintiff." *Id.*

D. *GoShare rescinded its job offer, and Plaintiff suffered a variety of economic and emotional distress injuries.*

After receiving InformData's report via Turn, GoShare rescinded its offer of employment to Plaintiff. JA 8, ¶¶ 85-88. Moreover, GoShare informed Plaintiff that it would not reconsider its decision to rescind the offer and that it would not request any other background check reports about him or accept a new employment application from him. *Id.*

Plaintiff later obtained a copy of InformData's report about him and learned that GoShare had rescinded its offer because the report contained information that had been expunged and was not in Delaware's public records. JA 8, ¶ 89. InformData's reporting made Plaintiff feel "very panicked, confused, and concerned" about the impact of that

reporting on his future. *Id.* Plaintiff's allegations elaborated on his state of mind following InformData's inaccurate reporting. According to those allegations, Plaintiff experienced a range of non-economic losses, including "damage to his reputation, loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment." JA 8, ¶ 100. In addition, Plaintiff alleged that he suffered economic losses, such as the loss of income, future income and of other future economic opportunities, as well as the "loss of time and money trying to correct his background check report." *Id.*

## II. Procedural History

### A. *Plaintiff asserted claims against InformData under the FCRA and the common law of negligence and defamation.*

Plaintiff sued InformData in the district court on May 13, 2025, filing his Complaint [Dkt. No. 1] and a Motion to Proceed under Pseudonym [Dkt. No. 3]. The district court eventually entered an order denying Plaintiff's request to proceed pseudonymously [Dkt. No. 42]. *See* JA 6. Plaintiff then filed a First Amended Complaint [Dkt. No. 43], which was materially identical to his original Complaint. Plaintiff asserted

three causes of action: one for violating the FCRA's requirements to follow reasonable procedures to ensure maximally accurate reporting possible by CRAs, as well as common-law causes of action for negligence and defamation *per se*. *See* JA 8.

All of Plaintiff's causes of action turned on the allegation that InformData's reporting about him was inaccurate, false, and/or misleading in multiple ways. Plaintiff primarily alleged that InformData's reporting was inaccurate and/or misleading because it published criminal record information that had been expunged from public records and because it referred to criminal offenses for which he had been pardoned. *See* JA 8, ¶¶ 75-81. Alternatively, Plaintiff alleged that InformData's reporting was inaccurate and/or misleading because providing expunged criminal record information from expunged records of criminal offenses created a misleading impression of the current contents of the public record, amounting to "a false statement that the criminal records *were not* expunged." JA 8, ¶ 102 (emphasis in original).

For his FCRA cause of action, Plaintiff alleged that InformData's reporting violated 15 U.S.C. § 1681e(b), which requires CRAs like InformData to "follow reasonable procedures to assure maximum

14

possible accuracy" in the preparation of a consume report. JA 8, ¶¶ 105-12. For the negligence claim, Plaintiff alleged that InformData had a duty of care arising from the common law and from the FCRA, that it breached this duty of care because it relied entirely upon automated processes to compile its information about Plaintiff and failed to undertake any quality-control measures, such as reviewing current public records, to assure that its reporting was accurate, complete, and up to date. JA 8, ¶¶ 113-29. For his defamation claim, Plaintiff alleged that in publishing its report to Turn and GoShare, InformData made false and defamatory statements about Plaintiff's criminal record and about the contents of the official public record, even though it should have known that the public record no longer contained any references to the expunged and pardoned offenses. JA 8, ¶¶ 130-42.

B. *InformData moved to dismiss Plaintiff's claims.*

InformData responded to Plaintiff's Complaint by asking the district court to compel arbitration, or, in the alternative to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6). *See* Motion to Compel Arbitration or for Dismissal [Dkt. No. 13]. After Plaintiff filed his First Amended Complaint, InformData renewed that motion. [Dkt. No. 44].

With respect to arbitration, InformData asserted that, when Plaintiff consented to a background check, he accepted certain terms and conditions, which included an agreement to arbitrate any of his disputes with Turn. For its motion, InformData contended that it had a right to arbitrate any disputes with Plaintiff even though it didn't have an arbitration agreement with the Plaintiff, but which was derived from Turn's forced arbitration clause. In its alternative request for dismissal, InformData primarily contended that Plaintiff had failed to state a plausible claim for relief under any of his causes of action because its reporting was entirely accurate. According to InformData, there was nothing false or misleading about reporting that Plaintiff had been convicted for certain offenses. InformData also argued that Plaintiff's negligence claim was barred by Delaware's economic-loss doctrine because Plaintiff had claimed only economic damages.

Plaintiff opposed both forms of relief. *See* Pl's Opp'n to Renewed Motion [Dkt. No. 47]. As to InformData's request for arbitration, Plaintiff argued that there was no legal basis for InformData to piggyback on an alleged arbitration agreement between Plaintiff and Turn. As to InformData's motion under Rule 12(b)(6), Plaintiff alleged facts showing

16

that the reporting of the expunged and pardoned offenses as current was legally and factually false, patently incorrect, or materially misleading for the purposes of both the FCRA and the common law because, among other things, that reporting included information that was no longer in official public records, thereby misrepresenting the contents of those official records and omitting material facts about the pardon and expungement that Plaintiff had been granted. Plaintiff also argued that his negligence claim could not be precluded by the economic-loss doctrine because he had alleged several kinds of non-economic injuries and damages, including various forms of emotional distress and injuries to privacy interests.

C.    *The district court dismissed Plaintiff's FCRA and common-law claims.*

The district court issued a Memorandum Opinion and Order [Dkt. No. 51] that denied InformData's request for arbitration but granted its request to dismiss Plaintiff's claims. On the question of arbitration, the district court agreed with Plaintiff, concluding that InformData could not claim a right to arbitration that was somehow derived from the alleged arbitration agreement between Plaintiff and Turn. JA 29. As the basis for its decision to dismiss Plaintiff's claims, the district court ruled only

17

on the question whether Plaintiff had adequately alleged that InformData's reporting was accurate. JA 29.

The district court reached its conclusions about accuracy by blending concepts from two distinct sections of the FCRA. It began its analysis with this Court's decision in *Roberts v. Carter-Young, Inc.*, 131 F.4th 241 (4th Cir. 2025). JA 29. As the district court saw it, the decision in *Roberts* meant that, for a cause of action under § 1681e(b), a plaintiff was required to allege that a consumer report was inaccurate with respect to a matter that was objectively and readily verifiable. *Id.*

The district court then concluded that, in the context of Plaintiff's allegations, the meaning of "maximum possible accuracy" in § 1681e(b) must be determined in terms of the language of the FCRA's obsolescence provisions in 15 U.S.C. § 1681c(a)(5). In general, § 1681c(a) imposes time limits on a CRA's reporting of different kinds of adverse information about consumers; but subsection (5) provides that time limits do not apply to "records of convictions of crimes." Because several federal courts have reasoned that expunged convictions still count as "convictions" within the meaning of § 1681c(a)(5), the district court concluded that,

under § 1681e(b), it was accurate to report an expunged conviction as a conviction. JA 29.

The district court also concluded that it was not inaccurate for InformData to omit information about the expungement and pardon. Drawing again on this Court's decision in *Roberts*, the district court concluded that, under § 1681e(b), CRAs were only required to be accurate about information that was both objective and verifiable, and, therefore, that they were only required to be accurate about information that was available to the public. JA 29. On the basis of this conclusion, the district court ruled that InformData had no duty to report either Plaintiff's expungement or pardon because neither of them were matters of public record. *Id*. As the district court put it, "applying the Fourth Circuit's explanation of the meaning of 'inaccurate' for purposes of FCRA, failing to report the later expungement is not inaccurate, because, as Plaintiff himself pleads, there are no public records of the expungement." *Id*.

As additional support for its conclusions, the district court also rejected Plaintiff's argument that, if nothing else, omitting any information about the expungement and pardon made InformData's reporting misleading about the contents of public records. JA 29. The

district court held that such a theory of inaccuracy could not provide a foundation for Plaintiff's claim because Plaintiff had not alleged that InformData's reporting was misleading in this way. *Id.*

The district court adopted InformData's argument about the economic-loss doctrine, pointing to case law that barred a negligence claim for economic harms, when that claim was asserted in conjunction with causes of action under the FCRA. JA 29. The district court rejected Plaintiff's argument that he had alleged non-economic injuries and damages, including harms to his privacy interests and various forms of emotional distress. In the district court's view, Plaintiff did not have any privacy interests in information about his criminal convictions because such information involves matters of historical and public fact, which were not erased by the expungement. *Id.* The district court did not, however, address the fact that Plaintiff had specifically alleged emotional distress injuries. *See id.*

The district court's decision to dismiss Plaintiff's defamation claim depended upon the same reasoning that informed its decision about accuracy in the context of the FCRA. See JA 29. As the district court saw it, Plaintiff failed to allege that there were any false statements in

20

InformData's reporting because he admitted that he had been convicted of the offenses noted in the report. *Id*. And it declined to consider Plaintiff argument that InformData's reporting created a false impression about the contents of the public record about Plaintiff. According to the district court, Plaintiff did not allege that InformData's reporting was false or misleading because it misrepresented the contents of the public record; the district court asserted that Plaintiff had only alleged that InformData published information about expunged offenses. JA 29.

## SUMMARY OF THE ARGUMENT

For the purposes of the FCRA, it is inaccurate for a CRA to publish a consumer report containing information that is patently incorrect or materially misleading, either through affirmative misstatements or omissions. *See Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008). Plaintiff sufficiently alleged that InformData's report about him was inaccurate when it alleged that it had represented his pardoned and expunged offenses as though they had never been pardoned or expunged. The district court erred in ruling that Plaintiff's allegations were not insufficient for three principal reasons. First, it incorrectly concluded that the obsolescence rules of 15 U.S.C. § 1681c(a) diminished a CRA's duty under 15 U.S.C. § 1681e(b) to report accurately about criminal convictions. This strained reading of the FCRA led the district court to the erroneous conclusion that a CRA is always permitted to report pardoned or expunged convictions as though no pardon or expungement had ever been granted. Second, it misconstrued Plaintiff's allegations, failing to recognize that he had alleged that it was patently incorrect and/or materially misleading for InformData to report his expunged conviction as though it were still part of the official public

22

record, especially because Delaware's expungement statute removes the conviction from the public record and expressly prohibits anyone – including CRAs – from reporting any information related to the expunged record. Third, the district court misapplied this Court's holding in *Roberts v. Carter-Young, Inc.*, 131 F.4th 241 (4th Cir. 2025). The decision in *Roberts* held that only objectively verifiable information is subject to the FCRA's accuracy standards, but the district court read too much into that requirement, believing that information is objectively verifiable only when it is expressly set forth in a source open to the public. The district court thought that information about Plaintiff's pardon and/or expungement was not objectively verifiable because there was no official record of either the pardon or the expungement order; but Plaintiff alleged that there were objective facts available to InformData that could have put it on notice that Plaintiff's conviction had been somehow set aside, even if InformData did not have access to the pardon documents or the expungement order themselves.

The district court also erred when it held that the economic loss doctrine barred Plaintiff's negligence action under Delaware common law. The district court reached this conclusion because it once again

misconstrued Plaintiff's allegations, failing to recognize that Plaintiff had alleged non-economic injuries, including injuries to his reputation, privacy interests, and emotional distress injuries, such as humiliation and anxiety, which arose from the damage to his reputation and his privacy interests. Because Plaintiff alleged non-economic injuries, the economic loss doctrine simply does not apply here.

The district court committed yet another error when it concluded that Plaintiff failed to allege the kind of false statement that would support a common-law defamation claim. Among other things, Plaintiff alleged that InformData's report included a false statement because it misrepresented facts about the current state of the official public record regarding Plaintiff's criminal history. But the district court continued its misconstruction of Plaintiff's allegations, insisting that Plaintiff had alleged it was inaccurate to report the historical fact of his conviction. Because it misread Plaintiff's allegations in this way, the district court misapplied case law in which courts held that newspapers did not make false statements when they had described a person's conviction as a historical event. This case law was inapposite because Plaintiff did not allege that it was false to state he had once been convicted; rather he

alleged that it was false to state or imply that his conviction was still on the books in Delaware.

Finally, it was an abuse of the court's discretion to vacate Plaintiff's pseudonymous status without articulating any on-the-record application of the governing balancing factors or considering narrower protective alternatives, despite the concrete risk that public identification would republish expunged criminal information and inflict the very harm this suit seeks to remedy.

# ARGUMENT

## Standard of Review

This Court conducts a *de novo* review of a district court's decision on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Hammock v. Watts*, 146 F.4th 349, 359 (4th Cir. 2025).

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a claim for "failure to state a claim upon which relief may be granted." This Court has held that, "[t]o survive a Rule 12(b)(6) motion, a complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Hammock*, 146 F.4th at 359-60 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). When considering whether a complaint has stated a plausible claim, the court must "view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded allegations." *Hammock*, 146 F.4th at 360 (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002) and Fed. R. Civ. P. 8(a)(2)). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556; *see also Scheuer v. Rhodes*, 416 U.S.

232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test.").

A decision to deny a motion to proceed in pseudonym or for a protective order is reviewed for abuse of discretion.

**I.    The district court erred by blending the requirements of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681c(a)(5) because the two sections impose independent limits on consumer reporting, and courts have held that information can still be inaccurate for the purposes of § 1681e(b) if it does not violate § 1681c(a)(5).**

   A.    *To state a plausible claim under § 1681e(b), a plaintiff must allege facts that will, among other things, permit a finding that a CRA's files or reports included inaccurate information.*

"In enacting FCRA Congress adopted a variety of measures designed to insure that [consumer reporting] agencies report accurate information." *Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). Perhaps the most fundamental of these measures is the FCRA's requirement that, when maintaining their files and preparing consumer reports, CRAs "follow reasonable procedures" to ensure

"maximum possible accuracy" of all consumer information. 15 U.S.C. § 1681e(b).

Because the FCRA's accuracy requirement is so important, determining whether the CRA has violated § 1681e(b) begins with an assessment of whether its reports contain inaccurate information. "[A] consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton*, 257 F.3d at 415. A plaintiff can state a plausible claim under § 1681e(b) if he can prove that such a violation caused him to suffer injury and damages. *See id.* at 418.

> B. *Information is "inaccurate" for the purposes of the FCRA when it is patently incorrect or includes or omits facts that create a misleading impression about the consumer.*

Although the FCRA imposes distinct accuracy requirements upon different aspects of the consumer reporting process, the concept of inaccuracy has a consistent meaning throughout the FCRA. *See Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 250 (4th Cir. 2025); see also *United States ex rel. Doe v. Credit Suisse AG*, 117 F.4th 155, 162 (4th Cir. 2024) (holding that this Court follows the "'standard principle of statutory

construction [which] provides that identical words and phrases within the same statute should normally be given the same meaning.'") (quoting *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)). Consistent with this principle, this Court has held that information provided by a furnisher or reported by a CRA "is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to have an adverse' effect." *Dalton*, 257 F.3d at 415 (quoting *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir.1998) (cleaned up); *see also Saunders v. Branch Banking And Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) ("a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression."). Courts undertake an "objective inquiry" to determine whether information is patently incorrect or materially misleading. *Roberts*, 131 F.4th at 251.

This Court has held that information is misleading when it can lead to a false impression about the consumer because it is technically accurate but omits factual information that is material to correctly understanding the consumer's creditworthiness, reputation, or character.

In *Saunders*, this Court provided an illustration about how contextual information can be necessary for accurate consumer reporting. In that case, a plaintiff received an auto loan; but, after the loan was disbursed, the lender did not take the steps necessary to permit the plaintiff to begin making payments, failing to give him an account number or a payment book. *Saunders*, 526 F.3d at 145. When the plaintiff asked how he could begin making payments, the lender repeatedly told him that it had no record of the loan and that he did not owe it any money. *Id*. Consequently, the plaintiff did not make the initial loan payments according to the schedule set forth in the loan agreement. *See id*. Once the lender recognized that the loan existed, it began to report the initial payments as delinquent, and it refused to change that reporting even after the consumer submitted a dispute to the CRAs, in which he provided the contextual information regarding the delinquent payments. *Id*. at 146-47. This Court held that it was reasonable for a jury to find that the lender's reporting was inaccurate when it reported the late payments while omitting the information that would show that "the consumer's failure to pay the debt does not reflect financial irresponsibility." *Id*. at 150.

    C.    *Plaintiff alleged facts that would permit a finding that InformData's reporting was inaccurate when it included*

*information from records that had been expunged about offenses for which he was pardoned.*

Plaintiff's allegations set forth a plausible theory of inaccuracy by identifying specific facts showing that InformData's reporting about his criminal history was patently incorrect or materially misleading, or both, in two principal ways. Either one of these types of inaccuracy would have been enough to set forth a plausible claim under § 1681e(b).

First, Plaintiff's allegations show that InformData's reporting implied patently incorrect information about the contents of Delaware's official public record. Plaintiff alleged that InformData purported that all of its reporting, including its reporting about Plaintiff, reflected the contents of the current public record, implying that it had been derived from an inspection of official sources at the county, state, and federal levels. *See* JA 8, ¶¶ 43-44. Plaintiff also alleged that this implication was simply false because Delaware statutes provide that, once an expungement order is entered, the official public record must treat anything covered by the expungement order as though it did not exist, and it is unlawful for any party to make any disclosure of the information contained in the expunged criminal record. JA 8, 8, ¶¶ 3, 55-56,102. As Plaintiff specifically alleged, InformData's reporting amounted to "a false

31

statement that the criminal records *were not* expunged." JA 8, ¶ 102 (emphasis in original).

An actionable inaccuracy can arise from implied false statements about the contents of public records. A Connecticut district court has held that it can be inaccurate for a CRA to report an expunged criminal record when the expungement process is regulated by statutes like those in Delaware. *See Watson v. Caruso,* 424 F. Supp. 3d 231 (D. Conn. 2019). There, the plaintiff had been convicted of a sexual offense in Connecticut, but his conviction records were expunged when subsequent legislation decriminalized the conduct for which he had been convicted. *Id.* at 237. Under Connecticut law, such an expungement had the effect of an "erasure," and the relevant statutes specifically provided that it was unlawful for any persons, including CRAs, to disclose the information in expunged criminal records. *Id.* at 239-40. When the plaintiff applied for a job, a CRA reported the expunged convictions to the plaintiff's prospective employer. *Id.* at 237-38. The *Watson* Court concluded that these facts could support a viable theory of inaccuracy. *Id.* at 244-45. In reaching this conclusion, the *Watson* Court relied heavily upon the decision in *Obabueki v. Int'l Bus. Mach. Corp.,* 145 F. Supp. 2d 371

(S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003). In *Obabueki*, the district court considered similar facts and found that information in a background report about criminal charges against the plaintiff "was not maximally accurate under Section 1681e(b)," given that those charges were subsequently dismissed.[1] *Id*. at 399.

The Consumer Financial Protection Bureau ("CFPB") has issued opinions that reach similar conclusions about why it is misleading for a CRA to report expunged convictions. CFPB, *Fair Credit Reporting; Background Screening*, Federal Register, 2024-00788, Jan. 23, 2024. The CFPB opined that it is inaccurate to report expunged criminal records because such reporting gives a misleading impression of contents of public records. In particular, the CFPB confirms Plaintiff's allegation that many CRAs – like InformData – do not undertake their own review of public records but rather rely on vendors that may compile databases

---

[1] After its ruling about the inaccuracy of the CRA's reporting, and after a jury verdict for the plaintiff, the *Obabueki* Court entered a judgment as a matter of law for the CRA on the ground that the plaintiff had failed to prove that the CRA's inaccurate reporting caused his damages. *Obabueki v. Choicepoint, Inc.*, 236 F. Supp. 2d 278 (S.D.N.Y. 2002), *aff'd* 319 F.3d 87 (2d Cir. 2003).

of old public record information, which are not updated to reflect expungements. *See id*.

Second, Plaintiff's allegations show that InformData's reporting about him created a misleading impression of his criminal history by omitting any information about his expungement and pardon. He alleged facts to show that InformData reported technically accurate information – the so-called historical fact of his convictions – while omitted additional information that reflects on how the government views his culpability. In this respect, Plaintiff's allegations make out a theory of inaccuracy that parallels the theory that this Court endorsed in *Saunders* because there is a material difference between a criminal offense that remains on the public record and a criminal offense that a judge has concluded should be removed from the public record. *See Saunders*, 526 F.3d at 150-51.

D. *The district court committed multiple errors in its analysis of Plaintiff's allegations misapplying the law and failing to construe Plaintiff's allegations in the most favorable light.*

The district court failed to recognize that Plaintiff had alleged a viable theory of inaccuracy because it misunderstood the law and violated the requirements of Rule 12(b)(6) by construing Plaintiff's allegations in the light most favorable to InformData.

1. *The district court erred by interpreting the accuracy standard for § 1681e(b) in terms of the obsolescence rules in § 1681c(a)(5).*

The district court made its first legal error when it chose to read the accuracy requirement of § 1681e(b) in terms of the obsolescence rules of § 1681c(a)(5), concluding that InformData's reporting of Plaintiff's expunged convictions was accurate for the purposes of § 1681e(b) because information about those convictions was not obsolete under § 1681c(a)(5). JA 29. Contrary to the district court's analysis, the statutory duties imposed by those two sections are entirely independent, and a CRA can still violate the requirements of § 1681e(b), even when it reports information that is reportable under § 1681c(a)(5).

In general, § 1681c(a) establishes time limits for the reporting of certain kinds of information by CRAs. For example, information about bankruptcy orders or adjudications can only be reported for ten years after the entry of the order or the end of the case. *See* 15 U.S.C. § 1681c(a)(1). There is a seven-year obsolescence period for the reporting of several different kinds of information, including information about civil suits or judgments, records of arrest, paid tax liens, or charge-offs on credit accounts. *See* 15 U.S.C. § 1681c(a)(2)-(4). Section 1681c(a)(5)

35

also creates an obsolescence period of seven years for "[a]ny other adverse item of information," but this catch-all rule does not apply to "records of convictions of crimes."

Federal courts have made it clear that the duties created by § 1681c(a)(5) are independent of the duties created by § 1681e(b) when they have ruled that a CRA's reporting of certain information can be inaccurate even if that information is not obsolete. The decision in *Obabueki, supra,* is again instructive. There, a CRA reported that the plaintiff four-year-old conviction to the plaintiff's prospective employer, but the report omitted information about the subsequent dismissal of the conviction. *Obabueki*, 145 F. Supp. 2d at 374-77. The district court ruled that, on the basis of these facts, the CRA breached the accuracy requirement of § 1681e(b) by reporting the conviction without the subsequent dismissal. *Id.* at 399. In reaching this conclusion, the district court made no mention of § 1681c(a)(5) or the meaning of "conviction," apparently because the accuracy of the reporting did not depend upon whether the inaccurate information was or was not obsolete. The decision in *Watson*, *supra,* is similar because the district court there took no account of the obsolescence rules of § 1681c(a)(5) when ruling that the

plaintiff had a viable theory of inaccuracy because a CRA reported a conviction without also reporting that the conviction was dismissed by operation of law after the enactment of a superseding statute. *Watson*, 424 F. Supp. 3d. at 244-45.

The holdings in *Obabeuki* and *Watson* illustrate how the district court erred when it read § 1681e(b) and § 1681c(a)(5) together. In the district court's reading, a CRA's reporting about a conviction cannot be inaccurate for the purposes of § 1681e(b) as long as the conviction was covered at any time by § 1681c(a)(5). But, as in *Obabeuki* and *Watson*, judicial orders and other events occurring after the entry of a conviction can change the way that conviction should be reported and can even make it inaccurate to report the conviction at all. Plaintiff alleged that his pardon and expungement were the kinds of post-conviction events that mandated a change in the way his conviction should be reported, and the district court erred by concluding that this theory of inaccuracy was not viable under the FCRA.

> 2. *The district court erred by concluding that InformData's reporting was not misleading despite its omission of information about Plaintiff's pardon and/or expungement.*

The district court disregarded the pleadings and misapplied the law when it ruled that Plaintiff failed to allege any kind of actionable inaccuracy. JA 29. Its most flagrant error came in its conclusion that Plaintiff failed to allege that InformData's report was inaccurate because it was incorrect or misleading about the current contents of public records. JA 29, n.6. As Plaintiff has noted above, his First Amended Complaint alleged numerous facts that, when taken together and read in the light most favorable to Plaintiff, support a finding that InformData's report created the impression that it reflected current public records, even though InformData never even reviewed the public record at the time of its report. JA 8 ¶¶ 3, 43-44, 55-56, 102. Indeed, Plaintiff specifically alleged that InformData's reporting amounted to "a false statement that the criminal records *were not* expunged." JA 8, ¶ 102 (emphasis in original). The district court's failure to recognize what Plaintiff actually alleged and to view those allegations in the proper light constitutes a fundamental failure to comply with Rule 12(b)(6) that is enough, in itself, to warrant reversal. *See Hammock*, 146 F.4th at 359-60.

Nevertheless, there are other grounds for reversal in the district court's analysis of inaccuracy. The district court also based that analysis

on the erroneous conclusion that, as a matter of law, it is impossible for a plaintiff to allege a plausible claim under § 1681e(b) when a consumer report is technically accurate in reporting a historical fact of a conviction but omits material information about a subsequent expungement of that conviction. JA 29. This conclusion was error because the district court derived it from a set of inapposite cases that considered issues of inaccuracy in the context of materially different facts or that simply did not address the same questions about accuracy that were raised by Plaintiff's allegations.

The district court placed its heaviest reliance upon the decision in *Bugoni v. Emp. Background Investigations, Inc.*, No. CV SAG-20-1133, 2022 WL 888434 (D. Md. Mar. 25, 2022), *aff'd*, No. 22-1548, 2023 WL 3721210 (4th Cir. May 30, 2023), but that case is consistent with Plaintiff's argument that technically accurate reporting about a conviction can still be inaccurate when it omits material contextual information. There, a CRA reported that the plaintiff had been convicted of misdemeanor attempted theft, and that conviction was later set aside under an Arizona statute. *Id.* at \*1. The plaintiff alleged that this reporting was inaccurate, but the district court concluded that such

reporting could not be inaccurate within the meaning of the FCRA because it included material contextual information by reporting both the conviction and the fact that it had been set aside. As the *Bugoni* Court explained, the CRA had "reported [the conviction] accurately, including the fact that it had been set aside and dismissed fifteen years later for non-merits-based reasons. *Id.* at *3. Thus, *Bugoni* contradicts the district court's conclusion about how contextual information is relevant to determining whether technically accurate information meets § 1681e(b)'s standard of "maximum possible accuracy."

The Eleventh Circuit's decision in *Rhodes v. First Advantage Background Servs. Corp.*, No. 24-11005, 2024 WL 4615775 (11th Cir. Oct. 30, 2024) also does not support the district court's conclusions. There, the plaintiff had been convicted of an offense in an Illinois court and sentenced to diversion, under which the conviction could be retroactively and automatically dismissed if he successfully completed probation. *Id.* at *1. When the plaintiff's probation ended, the Illinois court entered an order noting that the plaintiff had successfully completed probation, but, for some unexplained reason, it failed to enter any dismissal order. *Rhodes v. First Advantage Background Servs. Corp.*, 722 F. Supp. 3d

1274, 1280 (M.D. Fla. 2024), *aff'd in part, rev'd on other grounds and remanded*, No. 24-11005, 2024 WL 4615775 (11th Cir. Oct. 30, 2024). Years later, a CRA published a background report about the plaintiff that listed the conviction twice but did not include any mention of the automatic dismissal. *Rhodes*, 2024 WL 4615775 at *2. The Eleventh Circuit held that, as a matter of law, it was not inaccurate to report the conviction without any information about the dismissal, because the conviction was still part of the public record and because no dismissal order had ever been entered. *Id.*

Moreover, *Rhodes* is also consistent with Plaintiff's argument that it is inaccurate for a CRA to report offenses that are not in the public record. There, the CRA's report included a duplicate entry, showing that the plaintiff had been convicted twice for the same offense or that the plaintiff had been convicted of two counts of one offense. *Id.* at *6-7. The *Rhodes* Court held that the plaintiff had stated a plausible theory of inaccuracy by alleging that the duplicate entry was inaccurate because a jury could find that it was incorrect or misleading to list the conviction twice in the report. *Id.* As the Eleventh Circuit put it, "[w]e think a

reasonable jury could find that it is factually inaccurate under § 1681e(b) to report a criminal conviction that does not exist." *Id.* at *7.

The decision in *Rhodes* does not support the district court's ruling here for two reasons. First, the challenged reporting in *Rhodes* did not omit any material context for the CRA's reporting of the conviction. The CRA did not omit anything when it did not report the dismissal because, as the undisputed facts showed, no dismissal order had ever been entered by the Illinois court. *Rhodes*, 722 F. Supp. 3d at 1280. In this respect, the CRA's reporting was fully accurate about the current contents of the official Illinois court record, making it crucially different than InformData's reporting here. Second, in this case, Delaware law made the conviction legally non-existent once the expungement order was entered, and it was removed from the public record. *See* DEL. CODE. ANN. tit. 11, § 4372(e)(1) (West). For this reason, the Eleventh Circuit's decision in *Rhodes* shows why Plaintiff stated a plausible theory of inaccuracy because "a reasonable jury could find that it is factually inaccurate under § 1681e(b) to report a criminal conviction that does not exist." *Rhodes*, 2024 WL 4615775 at *7.

The district court here also cited the Seventh Circuit's opinion in *Aldaco v. RentGrow, Inc.*, 921 F.3d 685 (7th Cir. 2018), but that case expressly abjured any decision about the question presented here: whether information is inaccurate for the purposes of § 1681e(b) if it is misleading by omission. The principal question decided in *Aldaco* was whether the obsolescence period of § 1681c(a)(5) applied to a conviction that was formally entered and subsequently dismissed pursuant to the kind of diversionary disposition at issue in *Rhodes*. The plaintiff in *Aldaco* also raised a cause of action under § 1681e(b), but the Seventh Circuit decided the viability of that cause of action entirely on the basis of causation issues. *Aldaco*, 921 F.3d at 689-90. The *Aldaco* Court even went so far as to note that it did not need to resolve any questions about the FCRA's standard of accuracy and that "[w]e have not addressed whether technically accurate but misleading information qualifies as 'inaccurate' information under the Act."[2] *Id*. Moreover, *Aldaco* differs from this case on its facts: the reported conviction there had never been expunged. *Id*. at 686 ("Although Aldaco could have had the battery record

_____

[2] The Seventh Circuit has since adopted the same standard of accuracy that this Court adopted in *Saunders* and reaffirmed in *Roberts*. *See Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 811 (7th Cir. 2023).

expunged, she did not ask the court to do so."). Given all of these differences, *Aldaco* simply has no application here at all.

The district court misapplied the law because it misunderstood the holdings of its cited cases. Those cases do not conclude that it is always impossible for a plaintiff to show that the reporting of an expunged conviction is inaccurate. Indeed, the district court's cited cases are consistent with the proposition that it is ***inaccurate*** to report information that contradicts the actual contents of the current public record. Because Plaintiff alleged that InformData's reporting misrepresented the public record, he stated a viable theory of inaccuracy, and the district court erred by ruling otherwise.

> 3. *The district court erred by concluding that Plaintiff failed to allege objectively verifiable inaccuracies.*

The district court's other error regarding inaccuracy came from its misunderstanding of the holding in *Roberts*, which it coupled with its failure to construe Plaintiff's allegation in the most favorable light. In *Roberts*, this Court held that, for an FCRA claim, a plaintiff's theory of inaccuracy is viable if there is some reasonable way for a CRA to access objective information that determines the accuracy of the reported information. *Roberts*, 131 F.4th at 250-52. By contrast, an FCRA

44

plaintiff's theory of inaccuracy is not viable if proving that theory involved "complex fact-gathering and in-depth legal analysis" or implicated "unsettled questions of law." *Id.* at 251.

In the district court's view, *Roberts* established two principles about the FCRA's standard of accuracy: (1) that the standard only applied to information that could be objectively verified; and (2) that information is objectively verifiable only when it is expressly set forth in some source or record open to the public. JA 29. Extrapolating from this reading of *Roberts*, the district court concluded that information about Plaintiff's pardon or expungement was not subject to the standard of accuracy "because, as Plaintiff himself pleads, there are no public records of the expungement." *See* JA 29. In this way, the district court erroneously read *Roberts* to support the conclusion that information about whether a conviction has been expunged is objectively verifiable only if there is a public record expressly stating that an expungement or pardon was entered. *See id.*

The district court's conclusion is error because it reads too much into the "objectively and readily verifiable" standard established in *Roberts*. Nothing in *Roberts* prescribes the types of sources from which

objectively verifiable information can be drawn; and nothing in *Roberts* even suggests that information is objectively verifiable only when it is expressly stated. To the contrary, *Roberts* demonstrates that information can still be objectively verifiable even when the verification involves inferring one fact from another. In this connection, the *Roberts* Court pointed approvingly to one of this Court's prior decisions where the inaccuracy of reported information about the status of a credit account could be inferred from information in a bankruptcy docket. *See Roberts*, 131 F.4th at 252 (discussing *Guthrie v. PHH Morg. Corp.*, 79 F.4th 328, 345 (4th Cir. 2023)).

Plaintiff's theory of inaccuracy met the "objectively and readily verifiable" standard. When his allegations are taken together and viewed in a favorable light, Plaintiff's theory of inaccuracy showed that InformData could have inferred the fact of the expungement by comparing its private database of old criminal record information with the current public record. *See* JA 8, ¶¶ 3, 43-44, 55-56, 102. Such a comparison would have revealed a matter of objective fact: that the record of Plaintiff's conviction had been removed from the official public record. At the very least, this objective fact about the current public

record raises questions about the viability of any outdated information upon which InformData might have relied. Contrary to the district court's conclusion, Plaintiff did allege facts showing that InformData had access to objective information that indicated the inaccuracy of its reporting. This is enough to state an actionable theory of inaccuracy. InformData could argue to a jury that the absence of a public record demonstrates that its reporting was accurate, and the Plaintiff likewise could argue that the lack of a public record made it clear that there were no reportable convictions.

**II. The district court erred by ruling that Delaware's economic loss doctrine precluded Plaintiff's negligence claim because Plaintiff alleged non-economic losses, including various losses associated with emotional distress.**

The district court relied upon Delaware's economic loss doctrine to dismiss Plaintiff's common-law negligence claim because it concluded that the doctrine precludes negligence claims arising from purely economic losses and because it interpreted Plaintiff's First Amended Complaint as alleging only economic losses. JA 29. But here again, the district court misapplied a rule of law because it failed to read Plaintiff's allegations in the most favorable light. Indeed, it seems to have

47

completely disregarded Plaintiff's allegations of emotional distress injuries and damages, and the economic loss doctrine never applies when such allegations are made.

The economic loss doctrine is a judicially created doctrine that prevents parties from recovering in tort on the basis of an "entitlement that flows only from [a] contract." *Edelstein v. Goldstein*, No. CIV.A.09C-05-034DCS, 2011 WL 721490, at *7 (Del. Super. Ct. Mar. 1, 2011) (citation footnote omitted). The doctrine "provides that 'where an action is based entirely on a breach of the terms of a contract between the parties and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.'" *Id.* (quoting *Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR, 2001 WL 641737, at *5 (D. Del. May 24, 2001)); *see also Doe v. Bayhealth Med. Ctr., Inc.*, No. N24C-09-002 FJJ, 2025 WL 1010403, at *7 (Del. Super. Ct. Apr. 4, 2025) ("The rule is not an affirmative defense but rather a bar to tort actions that are better suited under contractual claims.").

The doctrine primarily applies when the injuries or damages claimed by the plaintiff all pertain to the subject matter of a contract. For this reason, a claimed loss counts as an "economic loss" when it "is

essentially the failure of the purchaser to receive the benefit of its bargain – traditionally the core concern of contract law." *McKenna v. Terminex Int'l Co.*, No. CIV.A. 04C-02-022RBY, 2006 WL 1229674, at *4 (Del. Super. Ct. Mar. 13, 2006) (internal quotation marks and citation omitted). The doctrine can also apply where the plaintiff brings a tort action arising from a defective product and where the plaintiff's only losses arise from the economic value of the product because, as more than one Delaware court has put it, the defective product "'has damaged only itself.'" *Brasby v. Morris*, No. C.A. 05C-10-022-RFS, 2007 WL 949485, at *6 (Del. Super. Ct. Mar. 29, 2007) (quoting *Marcucilli v. Boardwalk Builders, Inc.*, No. CIV. A. 99C-02-007, 1999 WL 1568612, at *4 (Del. Super. Ct. Dec. 22, 1999)). In such a case, the doctrine can preclude the plaintiff's tort claim against the manufacturer, even if the plaintiff and the manufacturer are not in privity of contract. *See Council of Unit Owners of Sea Colony E., Phases III, IV, VI & VII Condo., On Behalf of Ass'n of Owners v. Carl M. Freeman Assocs., Inc.*, No. CIV. A. 86C-AU-49, 1990 WL 177632, at *2-3 (Del. Super. Ct. Oct. 16, 1990).

The doctrine applies only where the alleged losses are economic in nature. Courts have identified an "economic loss" as "any monetary loss,

costs of repair or replacement, loss of employment, loss of business or employment opportunities, loss of good will, and diminution in value," which flows from the breach of a purely contractual duty." *McKenna*, 2006 WL 1229674, at *4 (internal quotation marks and citation omitted). The doctrine does not apply when a plaintiff alleges a personal injury or when the alleged losses extend to property other than the defective product itself. *Brasby*, 2007 WL 949485, at *6.

The doctrine does not apply here because Plaintiff alleged more than purely economic injuries, including personal injuries, including harms to his reputation and privacy interests, as well as emotional distress. Plaintiff alleged that, upon learning about InformData's inaccurate report, he felt "very panicked, confused, and concerned" about how the unlawful disclosure of his expunged record would affect his future. JA 8, ¶ 89. He also alleged that he suffered "damage to his reputation, loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment." JA 8, ¶ 100.

The district court simply disregarded all of these allegations of personal and non-economic injuries. It discounted Plaintiff's allegation of

reputational harm by suggesting that Plaintiff's own allegations disproved his assertion of reputational harm. In the district court's view, Plaintiff's conviction had been a matter of public record before the expungement, and the disclosure of information about that conviction could not have harmed his reputation or damaged his privacy interests. *See* JA 29. But this view of Plaintiff's alleged reputational injuries overlooks other facts alleged by Plaintiff – most importantly, the fact that Delaware law makes it unlawful for any person to disclose any of the information that is reflected an expunged criminal record. *See* JA 8, ¶¶ 54-55. Consequently, Plaintiff did have privacy interests in the information underlying his expunged criminal record, and the disclosure of that information was the kind of injury that takes a claim outside the scope of the economic loss doctrine. *See Bayhealth*, 2025 WL 1010403, at *7-8.

Moreover, regardless of whether Plaintiff's allegation of reputational injuries barred the application of the doctrine, his allegation of emotional distress injuries involved non-economic losses that also brought his claim outside the scope of the doctrine. In this connection, the district court relied upon the decision in *Fryfogle v. First Nat. Bank*

*of Greencastle*, No. CIV. 6:07CV00035, 2009 WL 700161 (W.D. Va. Mar. 17, 2009), where a West Virginia district court applied Pennsylvania's version of the economic loss doctrine to bar a negligence claim that was asserted along with an FCRA claim. The *Fryfogle* Court concluded that the economic loss doctrine could still apply when a plaintiff alleged that inaccurate consumer reporting caused emotional distress damages, as long as the plaintiff's primary damages were economic and as long as any alleged emotional distress flowed entirely from the economic losses. *Id.* at *7.

But *Fryfogle* cannot apply here for several reasons. First, the plaintiff in *Fryfogle* did not allege that the defendant harmed his reputation by disclosing information that should have been kept private. *Fryfogle*, 2009 WL 700161 at *6 ("the claim is based on the Defendant's *failure* to make a written communication") (emphasis in original). Here, Plaintiff did allege the disclosure of information that was shielded from public view by statute. Second, the injuries alleged in *Fryfogle* were mainly economic, and any emotional distress injuries flowed directly from the economic injuries. *Id.* at *7 ("Claims of emotional distress suffered as a result of the economic loss complained of do not remove the

claims from the scope of the economic loss doctrine."). But here, Plaintiff alleged facts that, when view in a light favorable to him, showed that he suffered emotional distress about more than the denial of his employment application; he was also aggrieved by the unlawful disclosure of his criminal history information. Third, *Fryfogle* addresses Pennsylvania' version of the economic loss doctrine, not Delaware's.

The district court's misapplication of the law and its skewed view of Plaintiff's allegations demonstrate that, when considering the viability of Plaintiff's negligence claim, it reached conclusions about what kinds of injuries Plaintiff could and could not prove by making inferences from his allegations – an approach that is prohibited when deciding a motion to dismiss. *See Hammock*, 146 F.4th at 360. Whether Plaintiff's alleged harms are sufficient to overcome the economic loss doctrine is a question better suited to summary judgment, after discovery can illuminate the nature and extent of those alleged injuries.

III. **The district court erred when ruling that Plaintiff failed to allege the kind of false statement that can give rise to a defamation claim. Plaintiff alleged that InformData's reporting included a substantially false statement because it represented his expunged criminal record as though it were a current public record.**

The district court dismissed Plaintiff's defamation claim because it concluded that "Plaintiff's own allegations establish that the fact he had a criminal record is substantially true." JA 29. In reaching this conclusion, the district court relied primarily on a opinions that did not apply Delaware law and that considered the question of a different kind of false statement than the one that Plaintiff alleged here. *See id.* (citing cases). Because these cases are distinguishable and because the district court misapprehended the type of false statement that Plaintiff alleged, its dismissal of Plaintiff's defamation claim was erroneous.

The district court's ruling amounted to the conclusion that Plaintiff's own allegations proved everything necessary to establish an affirmative defense to his own defamation claim. A plaintiff states a claim for defamation under Delaware law by alleging: "(1) a false and defamatory communication concerning the plaintiff, (2) publication of the communication to third parties, (3) understanding of the defamatory nature of the communication by the third party, (4) fault on the part of the publisher, and (5) injury to the plaintiff. *Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299, 1307 (D. Del. 1994) (citing RESTATEMENT (SECOND) OF TORTS, § 558 (1977) and *Gonzalez v. Avon Prod., Inc.*, 609

54

F.Supp. 1555, 1558 (D.Del.1985)). A defendant can make a successful affirmative defense to a defamation claim if it can show that the communication at issue was true. *Holmes v. The News Journal Co.*, No. CV N13C-11-136 MMJ, 2015 WL 1893150, at \*2 (Del. Super. Ct. Apr. 20, 2015), *aff'd*, 126 A.3d 1109 (Del. 2015). In the context of a defamation claim, a communication is "true" if it is either precisely true or "substantially true." *Page v. Oath Inc.*, 270 A.3d 833, 843 (Del. 2022). A communication is substantially true "if it produces the same impression on the reader which the precise truth would have." *Id.*

Plaintiff alleged facts showing that InformData's reporting about him was neither precisely nor substantially true. As Plaintiff has argued, he alleged that InformData's reporting was false because it was understood to include a misrepresentation of the contents of the official public records about him. *See* JA 8, ¶ 102. InformData's report was understood in this way because it was prepared to provide an employer with criminal background information about Plaintiff. JA 8, ¶¶ 60, 63-64, 83, 85. Plaintiff alleged facts showing that an employer reading that report would reasonably conclude that the current public record showed that Plaintiff had been convicted of a crime. JA 8, ¶¶ 76-80, 102, 134, 136.

Moreover, Plaintiff alleged that GoShare did in fact reach that conclusion and denied him employment as "a direct result of the expunged criminal records published by InformData." JA 8, ¶¶ 86.

The district court erred when it concluded that Plaintiff alleged facts showing the truth of InformData's reporting because it failed to recognize the kind of falsehood that Plaintiff was alleging. In the district court's view, Plaintiff admitted that InformData's reporting was true when he alleged that he had been convicted of an offense. JA 29. But the statements in InformData's reporting and Plaintiff's allegation about his conviction involve two different kinds of statements. InformData's report made a statement about the current contents of official public records; when Plaintiff admitted that he had been convicted, he made a statement of historical fact. Thus, InformData's statement was false because Plaintiff's criminal conviction could no longer be found in official public records, even though it was true to say, as a matter of historical fact, that Plaintiff had been convicted of a criminal offense. The district court failed to recognize the difference between these two kinds of statements because, once again, it erroneously chose to construe Plaintiff's allegations in the light most favorable to InformData.

The district court's failure to recognize this crucial difference explains why its cited cases are inapposite and shed no light on the question of what makes for an accurate criminal background check report. The district court cited four cases to support its conclusion that the expungement of a criminal conviction does not change "once-true" historical facts into falsehoods. JA 29 (citing *Martin v. Hearst Corp.*, 777 F.3d 546, 551 (2d Cir. 2015); *Lueckenbach v. Horizon Mississippi Publ'ns, Inc.*, 2017 WL 473903, at *2 (N.D. Miss. Feb. 3, 2017); *G.D. v. Kenny*, 15 A.3d 300, 313-16 (N.J. 2011); *Bahr v. Statesman Journal Co.*, 624 P.2d 664, 666-67 (Or. Ct. App. 1981)). But three of these cases involve newspapers that published statements of historical fact. *See Martin*, 777 F.3d at 548-49 (addressing a news report that the plaintiff had been arrested and charged with drug offenses); *Lueckenbach*, 2017 WL 473903 at *1 (addressing a news report about the historical fact that the plaintiff had been charged with public drunkenness); *Bahr*, 624 P.2d at 666-67 (addressing a news report that the plaintiff, a candidate for public office, refused to discuss the historical fact his expunged conviction). The fourth involved a statement of historical fact about a political candidate that was published in a campaign flyer. *G.D.*, 15 A.3d at 282 (addressing a

flyer stating that a candidate had been arrested and charged with drug offenses). Moreover, any person reading those published statements would have understood them to reflect historical facts. But, as noted above, Plaintiff alleged that InformData made a statement of fact about the current contents of public records, not merely a statement about the historical fact of Plaintiff's conviction. Plaintiff specifically alleged that InformData's statement about the contents of the current public record was false. Accordingly, Plaintiff's allegation about the historical facts of the judicial proceedings that resulted in his conviction did not negate or disprove his allegation that InformData made a false statement about the current contents of the public record.

The court also failed to appreciate the legal and factual significance of the Plaintiff's rights in an expungement. The Delaware legislature enacted its adult expungement statute for exactly the reasons that harmed the Plaintiff in this case, "the General Assembly finds that a criminal history is a hindrance to a person's present and future ability to obtain employment, housing, education, or credit. This subchapter is intended to protect persons from unwarranted damage which may occur

when the existence of a criminal history continues indefinitely." DEL. CODE ANN., tit. 11, § 4371 (West).

Under Delaware law, an expunged offense is not a matter of historical fact, but rather it is "as if the adjudication never occurred." *State v. Fletcher*, 974 A.2d 188, 196 (2009). Except for enumerated law enforcement purposes or pursuant to a court order, the reporting of an expunged record is unlawful. DEL. CODE ANN., tit. 11, § 4376 (West).

In *Fletcher*, the Delaware Supreme Court thoroughly explained an expungement's legal effect. Although that case arose under the juvenile expungement statute (DEL. CODE ANN., tit. 10, § 1001 (West)), the court's language reflects the fundamental principles of Delaware expungement law. Quoting extensively from legal scholarship, the court defined expungement in the criminal law context as the eradication of a record of conviction or adjudication upon the fulfillment of prescribed conditions—not simply the lifting of disabilities attendant upon conviction and a restoration of civil rights, but rather a redefinition of status, a process of erasing the legal event of conviction or adjudication and thereby restoring to the regenerative offender his status quo ante. The court held that an expunged adjudication cannot coexist with a

requirement of continued maintenance of sex offender registration, because the adjudication itself becomes a nullity. The underlying purpose of allowing expungement, the court explained, is to afford a juvenile the opportunity of starting life.

The *Fletcher* court clearly held that an expunged conviction has no legal existence whatsoever, whether previous or continuing. It is not an historical fact when the legal existence has been extinguished. Based on the purpose articulated by the General Assembly for adult expungements, the *Fletcher* framework applies with equal force to adult expungements under DEL. CODE ANN, tit. 11, §§ 4371–4376, given that the adult statute uses even stronger language (criminal penalties for disclosure) and the same rehabilitative purpose.

## CONCLUSION AND RELIEF REQUESTED

The district court's decision to dismiss Plaintiff's claims effectively establishes the proposition that federal and state law give CRAs an unrestricted license to report pardoned or expunged convictions as if no pardon or expungement had ever occurred. This proposition is contrary to this Court's rulings about the accuracy standards imposed by the FCRA and to the Delaware law of negligence and defamation. Plaintiff

asks this Court to correct the district court's misstatement of the law, reverse its order dismissing Plaintiff's claims under Fed. R. Civ. P. 12(b)(6), and remand this case for further proceedings.

Respectfully submitted,

Harry Smith

Dated: July 2, 2026

*/s/ Susan Mary Rotkis*
Susan Mary Rotkis
**CONSUMER JUSTICE LAW FIRM**
2290 East Speedway Boulevard
Tucson, AZ 85719
T: (602) 807-1504
E: srotkis@consumerjustice.com

*Counsel for Plaintiff-Appellant*
*Harry Smith*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the Federal and Local Rules in that it contains 11,526 words and was prepared in Microsoft Word and produced with a proportional serif 14-point font. I further certify that I am a member in good standing of the Bar of the Court.

Dated: July 2, 2026          */s/ Susan Mary Rotkis*
Susan Mary Rotkis
**CONSUMER JUSTICE LAW FIRM**


*Counsel for Plaintiff-Appellant*
*Harry Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. Counsel for Defendants-Appellants are registered CM/ECF users and will be served by the CM/ECF system.

Dated: July 2, 2026          */s/ Susan Mary Rotkis*
Susan Mary Rotkis
**CONSUMER JUSTICE LAW FIRM**


*Counsel for Plaintiff-Appellant*
*Harry Smith*