No. 26-1491

# In the
# United States Court of
# Appeals for the Fourth
# Circuit

HARRY SMITH,

*Plaintiff-Appellant,*

v.

INFORMDATA, LLC, formerly known as WHOLESALE SCREENING SOLUTIONS, LLC,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, HON. ROSSIE D. ALSTON, JR. (NO. 25-CV-00826)

## JOINT APPENDIX

*/s/ Susan Mary Rotkis*
Susan Mary Rotkis
**CONSUMER JUSTICE LAW FIRM**
2290 East Speedway Boulevard
Tucson, AZ 85719
T: (602) 807-1504
E: srotkis@consumerjustice.com

*Counsel for Plaintiff-Appellant
Harry Smith*

*/s/ Charles E. Harris, II*
Charles E. Harris, II
Preston R. Michelson
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
charris@mayerbrown.com
pmichelson@mayerbrown.com

Carmen Longoria-Green

**MAYER BROWN LLP**
1999 K Street NW
Washington, DC 20006
Tel: (202) 263-5282
clongoriagreen@mayerbrown.com

*Attorneys for Defendant*
*InformData, LLC*

# TABLE OF CONTENTS

EASTERN DISTRICT OF VIRGINIA DOCKET ………………….JA 1

ORDER RE MOTION TO PROCEED UNDER PSEUDONYM (ECF 42)…………………………………………….………………….JA 6

FIRST AMENDED COMPLAINT (ECF 43)…………………...…JA 8

MEMORANDUM OPINION & ORDER (ECF 51)……….…..…..JA 29

NOTICE OF APPEAL (ECF 52)………………………………….JA 49

# U.S. District Court
## Eastern District of Virginia − (Alexandria)
## CIVIL DOCKET FOR CASE #: 1:25−cv−00826−RDA−WEF

Doe v. InformData, LLC
Assigned to: District Judge Rossie D. Alston, Jr
Referred to: Magistrate Judge William E. Fitzpatrick
Case in other court:  4th Circuit, 26−01491
Cause: 15:1681 Fair Credit Reporting Act

Date Filed: 05/13/2025
Date Terminated: 03/11/2026
Jury Demand: Plaintiff
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

**Plaintiff**

**John Doe**

represented by **Susan Mary Rotkis**
Consumer Justice Law Firm PLC
2290 East Speedway Blvd
Tucson, AZ 85719
602−807−1504
Fax: 480−613−7733
Email: srotkis@consumerjustice.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**InformData, LLC**
*formerly known as*
Wholesale Screening, LLC

represented by **Anastasiya Lobacheva**
71 S. Wacker Dr.
Chicago, IL 60606
404−550−6766
Email: alobacheva@mayerbrown.com
*TERMINATED: 05/12/2026*
*PRO HAC VICE*

**Carmen Nicole Green**
Mayer Brown LLP (DC)
1999 K Street NW
Washington, DC 20006−1101
202−263−3123
Email: clongoriagreen@mayerbrown.com
*ATTORNEY TO BE NOTICED*

**Charles E. Harris , II**
Mayer Brown LLP (IL−NA)
71 S. Wacker Dr
Chicago, IL 60606
**NA**
312−782−0600
Fax: 312−701−7711
Email: charris@mayerbrown.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/12/2026 | 56 | ORDERED that the Motion (Dkt. 55) is GRANTED and Anastasiya K. Lobacheva will be withdrawn as counsel of record. Signed by District Judge Rossie D. Alston, Jr on 5/12/2026. (swil) (Entered: 05/12/2026) |
| 05/05/2026 | 55 | MOTION to Withdraw as Attorney *re Anastasiya K. Lobacheva* by InformData, LLC. (Green, Carmen) (Entered: 05/05/2026) |
| 04/23/2026 | 54 | USCA 4th Circuit Case Number 26−1491, Case Manager P. Ballard as to 52 NOTICE OF APPEAL. (triv) (Entered: 04/24/2026) |

| 04/21/2026 | 53 | Transmission of Notice of Appeal to US Court of Appeals re 52 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (swil) (Entered: 04/21/2026) |
|---|---|---|
| 04/06/2026 | 52 | NOTICE OF APPEAL by John Doe. Filing fee $ 605, receipt number AVAEDC−10898769. (Rotkis, Susan) (Entered: 04/06/2026) |
| 03/11/2026 | 51 | MEMORANDUM OPINION and ORDER that the Motion (Dkt. 44) is GRANTED−IN−PART and DENIED−IN−PART. The Motion is GRANTED as to the motion to dismiss for failure to state a claim. The Motion is DENIED as to the motion to compel arbitration; and it is FURTHER ORDERED that the action is DISMISSED (see Order for further details). Signed by District Judge Rossie D. Alston, Jr on 3/11/2026. (swil) (Entered: 03/11/2026) |
| 08/18/2025 | 50 | REPLY to Response to Motion re 44 MOTION to Compel *(Renewed Motion to Compel Arbitration or for Dismissal)* filed by InformData, LLC. (Green, Carmen) (Entered: 08/18/2025) |
| 08/11/2025 | 49 | RESPONSE in Opposition re 44 MOTION to Compel *(Renewed Motion to Compel Arbitration or for Dismissal)* filed by John Doe. (Attachments: # 1 Exhibit 1. Santiago Order, # 2 Exhibit 2. Agreement)(Rotkis, Susan) (Entered: 08/11/2025) |
| 07/30/2025 | 48 | ORDERED that Defendant's first Motion to Compel Arbitration or for Dismissal, Dkt. 34, is DENIED AS MOOT; and it is FURTHER ORDERED that Defendant's Motion to Stay Discovery and Related Deadlines, Dkt. 36, is GRANTED−IN−PART, insofar as the parties have not yet been given permission to start discovery so there should be discovery taking place, and DENIED−TN−PART, insofar as a stay is sought because there are no open discovery deadlines to stay (see Order for further details). Signed by District Judge Rossie D. Alston, Jr on 7/30/2025. (swil) (Entered: 07/30/2025) |
| 07/29/2025 | 47 | RESPONSE in Opposition re 36 MOTION to Stay *Discovery and Related Deadlines* filed by John Doe. (Rotkis, Susan) (Entered: 07/29/2025) |
| 07/29/2025 | | *** Motion Hearing deadline terminated − Per RDA's chambers, motion set for 9/10/2025 will be decided on the papers; no oral argument will be heard (tarm, ) (Entered: 07/29/2025) |
| 07/29/2025 | | Set Deadline as to 44 MOTION to Compel *(Renewed Motion to Compel Arbitration or for Dismissal)*. Motion Hearing set for 9/10/2025 at 10:00 AM in Alexandria Courtroom 1000 before District Judge Rossie D. Alston, Jr. (triv) (Entered: 07/29/2025) |
| 07/28/2025 | 46 | Notice of Hearing Date set for 9/10/2025 re 44 MOTION to Compel *(Renewed Motion to Compel Arbitration or for Dismissal)* (Green, Carmen) (Entered: 07/28/2025) |
| 07/28/2025 | 45 | Memorandum in Support re 44 MOTION to Compel *(Renewed Motion to Compel Arbitration or for Dismissal)* filed by InformData, LLC. (Attachments: # 1 Declaration of Charles E. Harris, II, # 2 Declaration of Daniel Agee)(Green, Carmen) (Entered: 07/28/2025) |
| 07/28/2025 | 44 | MOTION to Compel *(Renewed Motion to Compel Arbitration or for Dismissal)* by InformData, LLC. (Green, Carmen) (Entered: 07/28/2025) |
| 07/22/2025 | 43 | AMENDED COMPLAINT against InformData, LLC, filed by John Doe.(Rotkis, Susan) (Entered: 07/22/2025) |
| 07/18/2025 | 42 | Upon consideration of the Motion (Dkt. 15) and for the reasons stated in open court, it is hereby ORDERED that the Motion 15 is GRANTED and the Courts Order of May 15, 2025 permitting Plaintiff to proceed under pseudonym (Dkt. 5) is VACATED; and it is further ORDERED that Plaintiff shall file an amended complaint bearing his true name within seven (7) days of July 18, 2025; and it is further ORDERED that Defendants Motions to Seal 11 , 31 is DENIED as moot. The Clerk of Court is directed to temporarily maintain the unredacted versions of Defendants memorandum in support of its motions to compel arbitration or for dismissal (Dkts. 14, 35) under seal for seven (7) days. Signed by Magistrate Judge William E. Fitzpatrick on 7/18/25. (tfitz, ) (Entered: 07/21/2025) |

| | | |
|---|---|---|
| 07/18/2025 | 41 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick: Motion Hearing held on 7/18/2025 re 31 MOTION to Seal filed by InformData, LLC, 11 MOTION to Seal filed by InformData, LLC, 15 MOTION for Reconsideration re 5 Order on Motion for Miscellaneous Relief, filed by InformData, LLC. Appearance of counsel. Motion 15 is GRANTED and the Courts Order of May 15, 2025 permitting Plaintiff to proceed under pseudonym (Dkt. 5) is VACATED. Motions to Seal 11 , 31 are DENIED as moot; Order to follow. (Tape #FTR.)(tfitz, ) (Entered: 07/21/2025) |
| 07/18/2025 | 40 | EXHIBIT *1 to Plaintiff's Motion for Leave to File Supplemental Authority [Dkt. No. 27]* by John Doe.. (Rotkis, Susan) (Entered: 07/18/2025) |
| 07/17/2025 | | Set Deadline as to 31 MOTION to Seal. Motion Hearing set for 7/18/2025 at 10:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. (triv) (Entered: 07/17/2025) |
| 07/16/2025 | 39 | Notice of Hearing Date set for 7/18/2025 re 31 MOTION to Seal (Green, Carmen) (Entered: 07/16/2025) |
| 07/16/2025 | | Notice of Correction re 31 MOTION to Seal , 34 MOTION to Compel *Arbitration or for Dismissal*. The filing user has been notified to file a Notice of Hearing or Notice of Waiver of Oral Argument. (swil) (Entered: 07/16/2025) |
| 07/15/2025 | 38 | Sealed Attachment/Exhibit(s) Declaration of Charles E. Harris, II re 37 Memorandum in Support. (Green, Carmen) (Entered: 07/15/2025) |
| 07/15/2025 | 37 | Memorandum in Support re 36 MOTION to Stay *Discovery and Related Deadlines* filed by InformData, LLC. (Green, Carmen) (Entered: 07/15/2025) |
| 07/15/2025 | 36 | MOTION to Stay *Discovery and Related Deadlines* by InformData, LLC. (Green, Carmen) (Entered: 07/15/2025) |
| 07/15/2025 | 35 | Sealed Memorandum in Support re 34 MOTION to Compel *Arbitration or for Dismissal*. (Attachments: # 1 Declaration of Charles E. Harris, II, # 2 Declaration of Daniel Agee)(Green, Carmen) (Entered: 07/15/2025) |
| 07/15/2025 | 34 | MOTION to Compel *Arbitration or for Dismissal* by InformData, LLC. (Green, Carmen) (Entered: 07/15/2025) |
| 07/15/2025 | 33 | Memorandum in Support re 31 MOTION to Seal filed by InformData, LLC. (Green, Carmen) (Entered: 07/15/2025) |
| 07/15/2025 | 32 | Notice of Filing Sealing Motion LCvR5(C) by InformData, LLC re 31 MOTION to Seal (Green, Carmen) (Entered: 07/15/2025) |
| 07/15/2025 | 31 | MOTION to Seal by InformData, LLC. (Attachments: # 1 Proposed Order)(Green, Carmen) (Entered: 07/15/2025) |
| 07/15/2025 | 30 | ORDERED that that Motion (Dkt. 28) is GRANTED. The Court will contact the parties to make arrangements for a remote appearance. Signed by Magistrate Judge William E. Fitzpatrick on 7/15/2025. (swil) (Entered: 07/15/2025) |
| 07/15/2025 | 29 | ORDERED that Plaintiff's Motion for Leave to File Supplemental Authority is hereby GRANTED in re 27 Motion for Leave to File. Signed by Magistrate Judge William E. Fitzpatrick on 7/15/2025. (swil) (Entered: 07/15/2025) |
| 07/10/2025 | 28 | Joint MOTION for Leave to Appear Remote by John Doe. (Rotkis, Susan) (Entered: 07/10/2025) |
| 07/10/2025 | 27 | MOTION for Leave to File *Supplemental Authority* by John Doe. (Attachments: # 1 Proposed Order)(Rotkis, Susan) (Entered: 07/10/2025) |
| 07/08/2025 | | Set/Reset Deadlines as to 15 MOTION for Reconsideration re 5 Order on Motion for Miscellaneous Relief, . Motion Hearing set for 7/18/2025 at 10:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. (tfitz, ) (Entered: 07/08/2025) |
| 07/08/2025 | 26 | ORDERED that the parties shall appear before the undersigned for a hearing on Defendants 15 Motion for Reconsideration on July 18, 2025 at 10am. Signed by Magistrate Judge William E. Fitzpatrick on 7/8/25. (tfitz, ) (Entered: 07/08/2025) |

| | | |
|---|---|---|
| 07/07/2025 | 25 | REPLY to Response to Motion re 15 MOTION for Reconsideration re 5 Order on Motion for Miscellaneous Relief, filed by InformData, LLC. (Green, Carmen) (Entered: 07/07/2025) |
| 07/01/2025 | 24 | ORDERED that Defendants Motion, Dkt. 21, will be DENIED. Any further requests regarding remote attendance at the hearings should be directed to Judge Fitzpatrick's Chambers. Signed by District Judge Rossie D. Alston, Jr on 7/1/2025. (swil) (Entered: 07/02/2025) |
| 07/01/2025 | 23 | AMENDED COMPLAINT against InformData, LLC, filed by John Doe.(Rotkis, Susan) (Entered: 07/01/2025) |
| 07/01/2025 | 22 | RESPONSE in Opposition re 15 MOTION for Reconsideration re 5 Order on Motion for Miscellaneous Relief, filed by John Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B − Declaration of Plaintiff)(Rotkis, Susan) (Entered: 07/01/2025) |
| 06/23/2025 | 21 | MOTION to Consolidate Hearings and Participate Remotely *(Unopposed)* by InformData, LLC. (Green, Carmen) (Entered: 06/23/2025) |
| 06/18/2025 | 20 | ORDER granting 18 Motion for Pro hac vice. Appointed Anastasiya Lobacheva for InformData, LLC. Signed by District Judge Rossie D. Alston, Jr on 6/18/2025. (kgall) (Entered: 06/18/2025) |
| 06/18/2025 | 19 | ORDER granting 17 Motion for Pro hac vice. Appointed Charles E. Harris, II for InformData, LLC. Signed by District Judge Rossie D. Alston, Jr on 6/18/2025. (kgall) (Entered: 06/18/2025) |
| 06/18/2025 | | Notice of Correction re 15 MOTION for Reconsideration re 5 Order on Motion for Miscellaneous Relief, 13 MOTION to Compel *Arbitration or for Dismissal*. The filing user has been notified to file a Notice of Hearing or Notice of Waiver or Oral Argument. (swil) (Entered: 06/18/2025) |
| 06/17/2025 | 18 | Motion to appear Pro Hac Vice by Anastasiya Lobacheva and Certification of Local Counsel Carmen Longoria−Green Filing fee $ 75, receipt number AVAEDC−10243888. by InformData, LLC. (Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 17 | Motion to appear Pro Hac Vice by Charles Edward Harris, II and Certification of Local Counsel Carmen Longoria−Green Filing fee $ 75, receipt number AVAEDC−10243882. by InformData, LLC. (Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 16 | Memorandum in Support re 15 MOTION for Reconsideration re 5 Order on Motion for Miscellaneous Relief, filed by InformData, LLC. (Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 15 | MOTION for Reconsideration re 5 Order on Motion for Miscellaneous Relief, by InformData, LLC. (Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 14 | Sealed Memorandum in Support re 13 MOTION to Compel *Arbitration or for Dismissal*. (Attachments: # 1 Declaration of Charles E. Harris, II, # 2 Declaration of Daniel Agee)(Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 13 | MOTION to Compel *Arbitration or for Dismissal* by InformData, LLC. (Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 12 | Memorandum in Support re 11 MOTION to Seal filed by InformData, LLC. (Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 11 | MOTION to Seal by InformData, LLC. (Attachments: # 1 Proposed Order)(Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 10 | Notice of Filing Sealing Motion LCvR5(C) by InformData, LLC (Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 9 | Corporate Disclosure Statement by InformData, LLC. (Green, Carmen) (Entered: 06/17/2025) |
| 06/17/2025 | 8 | NOTICE of Appearance by Carmen Nicole Green on behalf of InformData, LLC (Green, Carmen) (Entered: 06/17/2025) |

| | | |
|---|---|---|
| 06/09/2025 | 7 | SUMMONS Returned Executed by John Doe InformData, LLC served on 5/27/2025, answer due 6/17/2025 (Rotkis, Susan) (Entered: 06/09/2025) |
| 05/16/2025 | 6 | Summons Issued as to InformData, LLC, NOTICE TO ATTORNEY: Please remove the headers and print two duplexed copies of the electronically issued summons for each Defendant. Please serve one copy of the summons and a copy of the Complaint upon each Defendant. Please ensure that your process server returns the service copy (executed or unexecuted) to your attention and electronically file it using the filing events, Summons Returned Executed or Summons Returned Unexecuted. (Attachments: # 1 Summons Notice)(swil) (Entered: 05/16/2025) |
| 05/15/2025 | 5 | ORDERED that the Motion to Proceed in Pseudonym is hereby GRANTED. It is further ORDERED, the Plaintiff shall hereafter be referred to by the pseudonym "John Doe," for purposes of this action. Let the Clerk of the Court docket this action as John Doe v. InformData, LLC f/k/a Wholesale Screening Solutions, LLC 3 Motion. Signed by Magistrate Judge William E. Fitzpatrick on 5/15/2025. (swil) (Entered: 05/16/2025) |
| 05/13/2025 | | Initial Case Assignment to District Judge Rossie D. Alston, Jr and Magistrate Judge William E. Fitzpatrick. (swil) (Entered: 05/14/2025) |
| 05/13/2025 | 4 | Memorandum in Support re 3 MOTION *to Proceed under Pseudonym* filed by John Doe. (Attachments: # 1 Proposed Order)(Rotkis, Susan) (Entered: 05/13/2025) |
| 05/13/2025 | 3 | MOTION *to Proceed under Pseudonym* by John Doe. (Rotkis, Susan) (Entered: 05/13/2025) |
| 05/13/2025 | 2 | Proposed Summons *as to InformData, LLC f/k/a Wholesale Screening Solutions, LLC* by John Doe (Rotkis, Susan) (Entered: 05/13/2025) |
| 05/13/2025 | 1 | Complaint ( Filing fee $ 405, receipt number AVAEDC−10176963.), filed by John Doe. (Attachments: # 1 Civil Cover Sheet)(Rotkis, Susan) (Entered: 05/13/2025) |

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JOHN DOE,

      *Plaintiff,*

   v.

INFORMDATA LLC, f/ka/ SCREENING
SOLUTIONS LLC,

      *Defendant.*

No. 1:25-cv-826-RDA-WEF

## ORDER

This matter is before the Court on Defendant's Motion for Reconsideration of the Court's Order on Plaintiff's Motion to Proceed Under Pseudonym (Dkt. 15).

Upon consideration of the Motion (Dkt. 15) and for the reasons stated in open court, it is hereby

**ORDERED** that the Motion (Dkt. 15) is **GRANTED** and the Court's Order of May 15, 2025 permitting Plaintiff to proceed under pseudonym (Dkt. 5) is **VACATED**; and it is further

**ORDERED** that Plaintiff shall file an amended complaint bearing his true name within seven (7) days of July 18, 2025; and it is further

**ORDERED** that Defendant's Motions to Seal (Dkt. 11, 31) is **DENIED** as moot.

The Clerk of Court is directed to temporarily maintain the unredacted versions of Defendant's memorandum in support of its motions to compel arbitration or for dismissal (Dkts. 14, 35) under seal for seven (7) days.

**ENTERED** this 18th day of July, 2025.

_William E. Fitzpatrick_

WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| Harry Smith,<br><br>             Plaintiff,<br><br>v.<br><br>InformData, LLC f/k/a Wholesale Screening Solutions, LLC,<br><br>             Defendant. | Civ. Action No. 1:25-cv-00826-RDA-WEF<br><br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Harry Smith ("Plaintiff" or "Mr.  Smith") by and through his counsel brings the following Complaint against InformData, LLC f/k/a Wholesale Screening Solutions, Inc. ("Defendant" or "InformData") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment purposed consumer report published by Defendant to non-party Turn Technologies Inc. ("Turn Technologies") who then resold the same to Plaintiff's potential employer,  inclusive of criminal records that had been ***pardoned and expunged*** years earlier. Defendant's reporting of the expunged records was doubly inaccurate and materially misleading because under Delaware law, an expunged criminal record is non-existent unless an exception is specifically provided by law, not present in this case. Alternatively, Defendant was negligent in publishing expunged criminal record information to non-party Turn Technologies Inc., which then resold the same to Plaintiff's potential employer despite the fact that the criminal records had been expunged and should not have been reported on the employment purposed consumer report.

1

**INTRODUCTION**

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to entities who ultimately resell those consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant reported a consumer report containing inaccurate information about Plaintiff to non-party Turn Technologies which in turn reported that inaccurate information to Plaintiff's employer. Specifically, Defendant reported *expunged* criminal record information. Defendant's reporting is grossly inaccurate and misleading because under Delaware law, an expunged record is non-existent.

4. The criminal records Defendant reported were *pardoned* and *expunged* criminal records that should not have been included in the employment purposed consumer report.

5. Specifically, Defendant sold a consumer report containing inaccurate information, specifically *expunged* criminal records, about Plaintiff to non-party Turn Technologies, which disclosure is a violation of Delaware law and punishable as a Class B misdemeanor

6. Defendant could have easily avoided selling the inaccurate consumer report had Defendant performed a cursory review of the widely available public court records from New Castle County, Delaware prior to publishing Plaintiff's report to non-party Turn Technologies which published the same to Plaintiff's employer.

7. Had Defendant performed even a cursory review of the public court records, Defendant would have discovered that there are no criminal records pertaining to Plaintiff that are publicly reported and otherwise eligible for including in a consumer report.

2

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures is not only a criminal offense, it resulted in Plaintiff's report being grossly inaccurate.

9. Specifically, Defendant does not employ reasonable procedures to prevent the inclusion of *expunged* criminal records in consumer reports.

10. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

11. Defendant's inaccurate report robbed Plaintiff of the benefit of expungement and cost Plaintiff a good paying job and job security.

12. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13. In the alternative, Defendant was negligent in that it owed a duty of care, which it breached, and ultimately caused Plaintiff's injuries resulting in damages.

14. Further, Defendant defamed Plaintiff by publishing to third parties criminal records that were expunged and should have been excluded, thereby amounting a false statement that the criminal records *were not* expunged. Defendant was negligent in publishing false statements about Plaintiff.

3

15. Under Delaware law, the Plaintiff has a right to deny that such criminal records ever existed.

16. Publishing false criminal record information about a consumer, particularly to a third party is an employer who is considering hiring that consumer for a job, is defamatory.

17. In this case, Plaintiff's injury – denial of employment – is a foreseeable and direct result of Defendant's defamatory statements to Plaintiff's employer.

18. Alternatively, as a result of Defendant's negligence and defamation, Plaintiff has suffered a range of injuries resulting in additional actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

19. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

**PARTIES**

20. Harry Smith ("Plaintiff" or "Mr. Smith") is a natural person residing in New Castle, Delaware, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

21. Defendant InformData Solutions, Inc. ("Defendant" or "InformData") is a corporation doing business throughout the United States and has a principal place of business located at 125 Hirst Road Suite 1B Purcellville, VA 20132. InformData can be served through its registered agent C T Corporation Systems located at 4701 Cox Rd Ste 285 Glen Allen, VA, 23060.

4

JA 11

22. Among other things, Defendant sells consumer reports, also known as background checks, to other consumer reporting agencies ("CRAs") to be resold to employers for their use of deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by reseller CRAs or CRAs acting as resellers in that context.

23. Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

24. Defendant is owned by InformData Holdings, which is controlled by Gallant Capital Partners.

25. Defendant has no common or overlapping ownership, control, location, governance, financials, branding, or operations with Turn.

**JURISDICTION AND VENUE**

26. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

27. Plaintiff also brings the Complaint under federal diversity jurisdiction 28 U.S.C. §1332, as the parties are completely diverse in citizenship (Plaintiff is a citizen of Delaware and Defendant is a citizen of Virginia) and the amount in controversy exceeds $75,000.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District and Division.

**STATUTORY BACKGROUND**

29.  Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

30.  While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

31. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

32.  Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

**THE FCRA'S PROTECTIONS FOR JOB APPLICANTS**

33.  Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

34.  The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

35.  In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

36.  The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

37. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

38.  Defendant disregarded its duties under the FCRA with respect to the consumer report it published about Plaintiff.

### DEFENDANT'S ILLEGAL BUSINESS PRACTICES

39.  Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

40.  As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

41. The background check industry takes in revenues in excess of three billion dollars, annually.

42. Background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating background checks.

---

[1]    CFPB,    Market    Snapshot:    Background    Screening    Reports    (Oct.    2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

7

JA 14

43. In fact, Defendant's website boasts that it "pioneered intelligent systems that 'scrape' county-level data for criminal information, **replacing human researchers with intelligent bots** (which we call 'agents.')"[2] (emphasis added).

44. Background check companies, like Defendant, collect millions of criminal and civil records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

45. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

46. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

47. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

48. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

49. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting *expunged* criminal records.

---

[2] https://www.informdata.com/improve-background-check-turnaround-time-accuracy#:~:text=every%20automated%20search.-,2.,who%20work%20only%20for%20InformData.

8

JA 15

50.  As a provider of background check reports, Defendant should be aware of the FCRA requirements and should be a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS
### Plaintiff's Criminal Records are Pardoned and Subsequently Expunged

51. In February of 2020, Plaintiff appeared before the Board of Pardons seeking a pardon for convictions that were more than a decade old.

52. Thereafter, the Board of Pardons recommended that a pardon be granted to Plaintiff based upon the progress Plaintiff had made over the course of the past decade.

53. Accordingly, on May 26, 2020, Governor Carney granted Plaintiff a Pardon of all the convictions.

54. Thereafter, in July 2020, Plaintiff applied for expungement of the convictions.

55. On March 3, 2021, Plaintiff's petition for expungement of the convictions was granted pursuant to 11 *Del. C.* § 4372 (e) (1), which states:

> If a court issues an order expunging records, all the criminal records relating to a case specified in the order must, within 60 days of the order, be removed from the court's files and placed in the control of the Supervisor of the State Bureau of Identification or otherwise segregated and kept in a manner that ensures that they are not open to public inspection or disclosure. The court may retain a nonpublic record of expungement orders. The court shall send a copy of its order of expungement to the Bureau, and shall consult with the Bureau to develop a standard form of order for expungements. Except as otherwise provided under § 4376 of this title, the Supervisor of the Bureau shall retain control over all expunged records and shall ensure that the records or information contained in the records are not released for any reason.

56. The expungement order further stated that Plaintiff need not disclose that he was arrested, charged, or convicted of the expunged convictions, for any reason except as provided under 11 *Del. C.* §4376(a), which states:

9

(1) Except for disclosure to law-enforcement officers acting in the lawful performance of their duties in investigating criminal activity or for the purpose of an employment application as an employee of a law-enforcement agency, it is unlawful for any person having or acquiring access to an expunged court or law-enforcement agency record to open or review it or to disclose to another person any information from it without an order from the court which ordered the record expunged.

(2) In addition to such other lawful purposes as may be prescribed by law or otherwise, criminal justice agencies shall have access to the following:

a. Records of expunged probations before judgment and past participation in the First Offenders Controlled Substance Diversion Program, First Offenders Domestic Violence Diversion Program, or a court-supervised drug diversion program for the purpose of determining whether a person is eligible for a probation before judgment, under § 4218 of this title; participation in the First Offenders Controlled Substance Diversion Program, under § 4767 of Title 16; participation in the First Offenders Domestic Violence Diversion Program, under § 1024 of Title 10; or participation in a court-supervised drug diversion program.

b. For criminal justice agencies involved in the licensing of individuals to carry a concealed deadly weapon under § 1441 of this title, records of expunged cases for the purpose of determining whether an individual meets the requirements to be granted a license to carry a concealed deadly weapon.

**Plaintiff Applies for Employment with GoShare Inc.**

57.  On or about March 13, 2023, Plaintiff applied for full-time employment as a Delivery Professional with GoShare Inc. ("GoShare").

58.  Upon applying to GoShare, Plaintiff successfully completed the interview and application process.

59.  GoShare extended a job offer to Plaintiff. Accordingly, Plaintiff also completed GoShare's driver's orientation.

60.  As part of the application process, GoShare and Plaintiff authorized a background check. Employment with GoShare was conditioned on Plaintiff passing a background check ("consumer report").

61.  On or about March 24, 2023, Plaintiff authorized a background check in relation to the GoShare job.

JA 17

62. Plaintiff was not worried about consenting to a background check report following the pardon and expungement.

63. GoShare contracted with non-party Turn Technologies to conduct background checks, including criminal background checks, on its prospective employees.

64. On or about March 24, 2023, GoShare ordered a criminal background check on Plaintiff from non-party Turn Technologies.

### Plaintiff Sued Turn Technologies

65. On June 13, 2023, Plaintiff sued nonparty Turn Technologies for violations of the FCRA.

66. Thereafter, Plaintiff pursued his claims against nonparty Turn Technologies in AAA.

67. Plaintiff's arbitration action against Turn Technologies was initiated on November 3, 2023.

68. During the lawsuit, Plaintiff learned for the first time that Defendant published inaccurate consumer information to third parties resulting in a job denial of his employment.

69. Specifically, on or about September 23, 2024, Plaintiff learned that Defendant provided inaccurate consumer information about Plaintiff to nonparty Turn Technologies.

### Defendant Published an Inaccurate Background Check Report to Non-Party Turn Technologies about Plaintiff

70. Non-Party Turn Technologies contracted with Defendant to conduct background checks, including criminal background checks.

71. Defendant has no agreement with the Plaintiff authorizing it to compile and sell consumer information about him to any third party.

72. On or about March 24, 2023, non-party Turn Technologies ordered a criminal background check on Plaintiff from Defendant.

73. On or about March 28, 2023, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to non-party Turn Technologies.

JA 18

74. Upon information and belief, Defendant used automated systems to search and obtain information about Plaintiff.

75. Within its consumer report, Defendant published inaccurate information about Plaintiff.

76. Specifically, within its consumer report about Plaintiff, Defendant sold and reported pertinent details of the criminal records that have been *expunged* and that should have been excluded from the employment purposed consumer report. Thereby defeating the entire purpose in seeking and securing an *expungement* order in the first place.

77. The criminal records reported by Defendant about Plaintiff to non-party Turn Technologies for resale to Plaintiff's prospective employer, were *expunged* and therefore should not have been included in Plaintiff's employment purposed consumer report.

78. Upon information and belief, the information Defendant relied on in preparing and selling its consumer report about Plaintiff was incomplete and outdated and likely obtained prior to Plaintiff's expungement.

79. A cursory review of the widely available public court records confirms that there were no criminal records reported about Plaintiff.

80. The expunged records should never be included in any consumer reports about Plaintiff and were no longer part of the public record.

81. The sole reason the *expunged* criminal records were included in the consumer report Defendant prepared about Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold to non-party Turn Technologies for resale about Plaintiff to Plaintiff's prospective employer.

82. Had Defendant followed reasonable procedures, it would have discovered that there were no reportable criminal records related to Plaintiff.

83. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to non-party Turn Technologies for resale to Plaintiff's prospective employer ***expunged*** criminal records that otherwise should not have been included, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

84. Alternatively, in preparing and selling a consumer report about Plaintiff, wherein Defendant published to Turn Technologies for resale to Plaintiff's employer inaccurate information about Plaintiff, Defendant breached its duty of care and caused Plaintiff's prospective employer to deny his employment application.

### GoShare Denies Plaintiff's Employment Application

85. On or about March 29, 2023, non-party Turn Technologies resold Defendant consumer report about Plaintiff to Plaintiff's prospective employer, GoShare.

86. That same day, Plaintiff was notified by GoShare that his employment application was denied as a direct result of the **expunged** criminal records published by Defendant and sold to non-party Turn Technologies.

87. In the same notification received from GoShare, Plaintiff was informed that he could not reply to the adverse action communication, that new applications would not be accepted, and new background checks would not be performed.

88. Effectively, and due to Defendant's actions, Plaintiff was banned from any future employment opportunities with GoShare.

13

89. Shortly thereafter, Plaintiff obtained a copy of the subject consumer report resold by non-party Turn Technologies to Plaintiffs prospective employer. Plaintiff was shocked upon reviewing the *expunged* criminal records contained within the subject employment report.

90. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting both in relation to the position with GoShare, but also the impact of the same on his future.

91. Plaintiff contacted GoShare and informed it that the criminal records reported on the employment purposed consumer report should not have been reported.

92. Specifically, Defendant reported criminal records that were *pardoned* and *expunged* and published the *pardoned* and *expunged* records in a consumer report about Plaintiff and sold the report to non-party Turn Technologies, who in turn, resold the same to Plaintiff's prospective employer. This exculpatory information was widely available to Defendant prior to publishing Plaintiff's consumer report to non-party Turn Technologies for resale to Plaintiff's prospective employer, but Defendant failed to obtain or perform even a cursory review of such information.

93. Defendant's inaccurate report cost Plaintiff a promising, well-paying job with GoShare.

94. Plaintiff had anticipated earning between $20,000 to $35,000 per year driving for GoShare.

95. Plaintiff is the breadwinner of his household who is responsible for the care of his two young children. The employment opportunity loss caused Plaintiff to experience a great deal of stress about his ability to provide for his family. The anticipated income was intended to cover the costs attendant to housing, but also Plaintiff hoped the income would allow him to provide a better quality of life overall for his family.

14

JA 21

96. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

97. At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

98. At all times pertinent hereto, Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

99. Defendant is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant's violations of the FCRA are willful.

100. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

101. In the alternative, Defendant was negligent in that it owed a duty of care, which it breached, and ultimately caused Plaintiff's injuries resulting in actual damages.

102. Further, Defendant defamed Plaintiff by publishing to third parties criminal records that were expunged and should have been excluded, thereby amounting a false statement that the

15

JA 22

criminal records *were not* expunged. Defendant was negligent in publishing false statements about Plaintiff.

103. Alternatively, as a result of Defendant's negligence and defamation, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

104. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

<u>**CLAIMS FOR RELIEF**</u>
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

105. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

106. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

107. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

108. At all times pertinent hereto, the above-mentioned employment reports were "consumer report[s]" as that term is defined by 15 U.S.C. § 1681a(d).

109. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

16

JA 23

110. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

111. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

112. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### Negligence

113. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

114. Defendant owed various duties of care to Plaintiff under common law and the FCRA.

115. Specifically, Defendant owed a duty to Plaintiff with regard to information it published about Plaintiff to a third-party.

116. Defendant had access to criminal public records, just as every member of the public, that would have shown that there were no public criminal records that it could have reported about the Plaintiff.

17

JA 24

117. Defendant knew that it was not permitted under the FCRA or state law to report expunged criminal public records.

118. Upon information and belief, despite the risk of reporting inaccurate and expunged criminal public records, Defendant's policies and procedures provide are automated and do not require confirming the existence of such records at the originating court.

119. Defendant knew the risks inherent to preparing and selling inaccurate consumer reports, including employment denial and employment loss.

120. Defendant attempts to disclaim its obligation to report maximally accurate information about consumers, including the Plaintiff, to third parties by shifting its obligation onto the third party instead of following reasonable procedures.

121. Defendant knows that it does not ensure that information it publishes about consumers, including the Plaintiff, is not complete and up to date because it doesn't check with the originating court before publishing criminal record information about consumers without first checking to see if the records exist.

122. The Defendant's conduct demonstrates a reckless disregard for consumer rights in order to make more money for itself through its automated processes, putting consumers like Plaintiff at high risk of inaccurate reports and resulting injury.

123. Defendant's conduct in publishing inaccurate information to a third-party about Plaintiff constitutes negligence.

124. Defendant had a duty to act as would a reasonable CRA to follow reasonable procedures to assure the maximum possible accuracy of the information it reported concerning Plaintiff. Defendant breached that duty by publishing expunged records to a third-party. As a proximate

18

result of this breach of duty, Plaintiff suffered injuries. Those injuries resulted in monetary damages to Plaintiff.

125. Defendant breached its duty to Plaintiff through its conduct alleged herein in violation of the statute at issue herein. Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the information it reported concerning Plaintiff.

126. Plaintiff asserts that Defendant is the actual and legal cause of Plaintiff's injuries.

127. Plaintiff alleges that as a proximate result of Defendant's negligence, Plaintiff has suffered actual harm and actual damages.

128. As a result of Defendant's negligence, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

129. Due to the egregious violations alleged herein, Plaintiff asserts that Defendant breached its duties in an oppressive, malicious, despicable, gross and wantonly negligent manner. As such, said conduct establishes Defendant's conscious disregard for Plaintiff's rights and entitles Plaintiff to recover punitive damages from Defendant.

## COUNT III
### Defamation Per Se (in the alternative)

130. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

131. Defendant published a false and outrageous statement about Plaintiff by publishing to a third-party criminal records that were expunged and should have been excluded from the consumer report.

19

JA 26

132. Defendant knew or should have known that the criminal public records were going to be compiled and repackaged in a consumer report that was ultimately going to be used to make an employment decision.

133. That third party transmitted to Plaintiff's prospective employer the criminal records that were expunged and should have been excluded from the consumer report.

134. By publishing the expunged criminal records to the third parties, the Defendant communicated to those third parties that the criminal records were not expunged, a false statement.

135. Defendant did nothing to verify this defamatory statement prior to publishing the same to third parties.

136. The publishing of the criminal records allowed third parties, including Plaintiff's potential employer, to view the expunged and, thus, non-existent offenses, thereby significantly reducing the Plaintiff's chances of securing employment.

137. Defendant's illegal conduct is the actual and proximate cause of Plaintiff's injuries, which injuries were completely foreseeable.

138. Plaintiff took the steps necessary to ensure expungement of the criminal records.  Plaintiff had zero fault of his own for Defendant's conduct.

139. The publishing of the criminal records that were expunged caused injury to Plaintiff by deterring a third party from associating with him.

140. The defamatory statement made by Defendant about the Plaintiff including imputing to him an unexpunged crime of moral turpitude that prejudiced him in his profession or trade, and thus was defamatory per se under either Delaware or Virginia law.

141. As a result of Defendant's defamatory statement, Plaintiff has suffered a range of actual injuries resulting in substantial damages including, without limitation, loss of employment

20

JA 27

opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

142. Due to the egregious violations alleged herein, Plaintiff asserts that Defendant breached its duties in an oppressive, malicious, despicable, gross, reckless, and wanton manner. As such, said conduct establishes Defendant's conscious disregard for Plaintiff's rights and entitles Plaintiff to recover punitive damages from Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

  i.   Determining that Defendant negligently and/or willfully violated the FCRA;

 ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

 iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: July 22, 2025

_____/s/_____
Susan Mary Rotkis, VSB 40693
CONSUMER JUSTICE LAW FIRM
2290 East Speedway Blvd.
Tucson, AZ 85719
Telephone: (602) 847-1504
Fax: (602) 847-1504
Email: srotkis@consumerjustice.com

*Attorney for Plaintiff*
*Harry Smith*

21

JA 28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HARRY SMITH,                                     )
                                                 )
            Plaintiff,                           )
                                                 )
    v.                                           )        Civil Action No. 1:25-cv-826 (RDA/WEF)
                                                 )
INFORMDATA, LLC, formerly known                  )
as Wholesale Screening, LLC,                     )
                                                 )
            Defendant.                           )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant InformData, LLC's Motion to Compel

Arbitration or for Dismissal. Dkt. 44 (the "Motion"). The Court has dispensed with oral argument

as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This

matter has been fully briefed and is now ripe for disposition. Considering the Motion together

with Defendant's Memorandum in Support (Dkt. 45); the First Amended Complaint (Dkt. 43)

("FAC"); Plaintiff Harry Smith's Opposition (Dkt. 49); and Defendant's Reply (Dkt. 50), the Court

GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion for the following reasons.

## I. BACKGROUND

### A. Factual Background

Plaintiff Harry Smith filed suit for alleged violations of the Fair Credit Reporting Act

("FCRA") arising out of an "employment purposed consumer report published by Defendant to

non-party Turn Technologies Inc. . . . who then resold the same to Plaintiff's potential employer,

inclusive of criminal records that had been ***pardoned and expunged*** years earlier." Dkt. 43 at 1

(emphasis in original). According to the FAC, Defendant is a consumer reporting agency that

compiles and maintains files on consumers on a nationwide basis and then sells consumer reports

JA 29

generated from its database to entities who ultimately resell those reports to employers making decisions regarding whether to offer employment to certain individuals. *Id.* at 2.

Plaintiff alleges that 95 percent of employers surveyed in 2018 conducted one or more types of background screenings on potential employees. *Id.* ¶ 40. Plaintiff asserts that background checks are "generally created by running automated searches through giant databases of aggregated criminal record data" with little to no manual, in-person review. *Id.* ¶ 42. According to Plaintiff, Defendant's website asserts that it pioneered systems that scrape county-level data for criminal information and accordingly replaced human researchers with bots. *Id.* ¶ 43.

In February of 2020, Plaintiff appeared before the Board of Pardons (for an unidentified jurisdiction, but presumably Delaware) and sought a pardon for convictions that were more than a decade old. *Id.* ¶ 51. Thereafter, the Board of Pardons recommended that Plaintiff be pardoned. *Id.* ¶ 52. On May 26, 2020, then-Governor of Delaware John Carney granted Plaintiff a pardon for all of his convictions. *Id.* ¶ 53.

In July 2020, Plaintiff applied for expungement of his convictions. *Id.* ¶ 55. On March 3, 2021, Plaintiff's petition for expungement was granted pursuant to 11 Del. Code § 4372(e)(1), which provides that, within 60 days of expungement, all criminal records must "be removed from the Court's files." *Id.* ¶ 55. The expungement order further stated that Plaintiff need not disclose that he was arrested, charged, or convicted of the expunged convictions, for any reason except as provided for in 11 Del. Code § 4376(a). *Id.* ¶ 56. That statute provides that it is "unlawful for any person having or acquiring access to an expunged court or law-enforcement agency record to open or review it or to disclose to another person any information from it without an order from the court which ordered the record expungement." *Id.*

2

JA 30

On March 13, 2023, Plaintiff applied for full-time employment as a Delivery Professional with GoShare Inc. *Id.* ¶ 57. Plaintiff completed an interview and was then offered a job. *Id.* ¶¶ 58-59. Plaintiff's employment with GoShare was conditioned on the results of a background check. *Id.* ¶ 60. On March 24, 2023, Plaintiff authorized a background check in relation to the GoShare job. *Id.* ¶ 61.

GoShare contracted with Turn Technologies to conduct background checks for prospective employees. *Id.* ¶ 63. On March 24, 2023, GoShare ordered a criminal background check on Plaintiff from non-party Turn Technologies. *Id.* ¶ 64. This criminal background check did not recognize Plaintiff's expunged records.

On June 13, 2023, Plaintiff sued Turn Technologies for violations of FCRA. *Id.* ¶ 65; *Smith v. Turn Techs., Inc.*, No. 1:23-cv-00647 (D. Del.) (the *"Turn* Litigation"). Thereafter, Plaintiff pursued his claims against Turn Technologies in arbitration before the American Arbitration Association. *Id.* ¶ 66. That arbitration was initiated on November 3, 2023. *Id.* ¶ 67. During that arbitration, Plaintiff learned, for the first time, of Defendant's involvement. *Id.* ¶ 68. Specifically, on September 23, 2024, Plaintiff learned that Defendant provided information regarding Plaintiff to Turn Technologies. *Id.* ¶ 69.

Defendant notes that, in the *Turn* Litigation, Plaintiff similarly alleged that Turn Technologies violated Section 1681e(b) of FCRA. Dkt. 45 at 11.[12] Defendant further notes, as Plaintiff alleges, Plaintiff's claims against Turn Technologies were subject to an arbitration

---

[1] This Court may "take judicial notice of docket entries, pleadings, and papers in other cases." *Mills v. City of Norfolk, Virginia*, 2020 WL 7630647, at *4 (E.D. Va. Dec. 22, 2020) (quoting *Brown v. Ocwen Loan Servicing*, LLC, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015)).

[2] All references to page numbers refer to the CM/ECF assigned page numbers unless otherwise indicated.

3

agreement contained in the Terms of Use (the "Terms") which states: "You and Turn agree to arbitrate all dispute and claims between us that arise out of, relate to, or associated with [Turn's] Services." *Id.* at 12; Dkt. 45-1 at 1 ¶ 4, 28-63. Defendant further asserts that Plaintiff agreed to the Terms on March 24, 2023. Dkt. 45 at 12.

Plaintiff asserts that Turn Technologies contracted with Defendant to conduct background checks, including criminal background checks. *Id.* ¶ 70. On March 24, 2023, Turn Technologies ordered a criminal background check on Plaintiff from Defendant. *Id.* ¶ 72. On March 28, 2023, Defendant completed its consumer report about Plaintiff and sold the same to Turn Technologies. *Id.* ¶ 73. Plaintiff alleges, upon information and belief, that Defendant used automated systems to search and obtain information about Plaintiff. *Id.* ¶ 74.

Plaintiff asserts that, within its consumer report on Plaintiff, Defendant sold and reported pertinent details of criminal records that have been expunged and which, Plaintiff argues, should have been excluded from the background check. *Id.* ¶ 76. Plaintiff asserts that Defendant's inclusion of such information "defeat[s] the entire purpose in seeking and securing an ***expungement*** order in the first place." *Id.* (emphasis in original). Plaintiff alleges, upon information and belief, that "the information Defendant relied on in preparing and selling its consumer report about Plaintiff was incomplete and outdated and likely obtained prior to Plaintiff's expungement." *Id.* ¶ 78. Plaintiff asserts that "[a] cursory review of the widely available public court records confirms that there were no criminal records reported about Plaintiff." *Id.* ¶ 79.

On March 29, 2023, Turn Technologies resold Defendant's consumer report about Plaintiff to Plaintiff's prospective employer, GoShare. *Id.* ¶ 85. That same day, Plaintiff was notified by GoShare that his employment application was denied as a direct result of the expunged criminal records published by Defendant. *Id.* ¶ 86. In the same notification, GoShare informed Plaintiff

4

that he could not reply to the communication, that new applications would not be accepted, and that new background checks would not be performed. *Id.* ¶ 87.

Shortly thereafter, Plaintiff obtained a copy of the background check resold by Turn Technologies. *Id.* ¶ 89. He was shocked to see that his expunged criminal convictions were contained in the report. *Id.* Plaintiff contacted GoShare to inform it that the criminal records should not have been reported. *Id.* ¶ 91.

Plaintiff asserts the following claims for relief: (i) failure to follow reasonable procedures to assure maximum possible accuracy, in violation of 15 U.S.C. § 1681e(b); (ii) negligence; and (iii) defamation per se.

### B. Procedural Background

On May 13, 2025, Plaintiff filed his Complaint. Dkt. 1. Initially, on June 17, 2025, Defendant first filed its Motion to Compel Arbitration or for Dismissal. Dkt. 13. On July 1, 2025, Plaintiff filed an Amended Complaint. Dkt. 23. Thereafter, Defendant filed another Motion to Compel Arbitration or for Dismissal. Dkt. 34. Plaintiff again amended his complaint on July 22, 2025. Dkt. 43.

On July 28, 2025, Defendant filed the pending Motion. Dkt. 44. On August 11, 2025, Plaintiff filed his Opposition. Dkt. 49. On August 18, 2025, Defendant filed its Reply. Dkt. 50.

## II.    STANDARD OF REVIEW

### A.    Arbitration Agreements

The Federal Arbitration Act ("FAA") stipulates that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The effect of [this] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the

5

Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (alterations added). Likewise, the FAA was passed "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Rader v. Nw. Fed. Credit Union*, 2024 WL 388097, at \*4 (E.D. Va. Feb. 1, 2024) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000)).

B.     Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 189 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of App. of Md.*, 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks and citation omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. *See id.*; *Twombly*, 550 U.S. at 556. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The factual allegations must be sufficient to "raise a right to relief above the speculative level" so

6

JA 34

as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III.    ANALYSIS

Defendant first argues that Plaintiff must arbitrate his claims pursuant to the Terms in the agreement between Turn Technologies and Plaintiff. In the alternative, Defendant seeks dismissal of each count of the FAC. The Court will address each argument in turn.

### A.    Whether This Case Should be Arbitrated

Defendant argues that whether this case should be subject to arbitration is a matter of Delaware law. Dkt. 45 at 16. Plaintiff does not contest the application of Delaware law but merely asserts that it does not matter whether Delaware or Virginia law applies here. Dkt. 49 at 9. Accordingly, the Court assumes without deciding that Delaware law applies.

Defendant concedes that "Delaware courts interpret contract terms according to their plain, ordinary meaning" and that a court "interpreting any contractual provision . . . must give effect to all terms of the instrument." Dkt. 45 at 21 (citing *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012); *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998)). Equally important, Delaware courts recognize "the accepted principle that there is no obligation to arbitrate except as created by contract." *Lowe Bros. v. Church Home Found., Inc.*, 1980 WL 6372, at *1 (Del. Ch. Apr. 16, 1980). Here, the applicable language in the Terms that Defendant seeks to enforce is: "You and Turn agree to arbitrate all dispute and claims between us that arise

7

out of, relate to, or associated with [Turn's] Services." Dkt. 45-1 at 1 ¶ 4, 28-63. The Terms further provide that references to Turn, you, or us "include our respective predecessors in interest, successors, and assigns, as well as our respective past, present, and future subsidiaries, affiliates, agents, employees, and all authorized or unauthorized users or beneficiaries of Services or Sites under this or prior agreements between us." *Id.*

Defendant, perhaps recognizing that the Terms limit the arbitration agreement to disputes "between us," seeks to shoehorn itself into the definition of Turn, by designating itself as a beneficiary of Turn. In so arguing, Defendant argues that the dictionary definition of a beneficiary is a person or thing that "receives help or an advantage from something" and asserts that it received a "financial benefit from Turn." Dkt. 45 at 22. But, under the Terms, it is not enough to simply benefit from Turn in general. The Terms provide that entities are only covered as "Turn" under the arbitration provision if they are "users or beneficiaries *of Services or Sites*." Dkt. 45-1 at 45 (emphasis added). In expanding the Terms to include any financial benefit, Defendant reads out a material limitation on the arbitration agreement. *Alta Berkely VI C.V. v. Omneon, Inc.*, 2011 WL 2923884, at *5 (Del. Super. Ct. July 21, 2011), *aff'd sub nom. Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381 (Del. 2012) (holding that "the Court has honored the basic tenet of contract construction that requires courts to give meaning to all contractual terms and discourages courts from endorsing a construction that would render any contractual term superfluous"). There are no allegations that Defendant was the user or beneficiary of Turn Technologies' *Services* or *Sites*. Accordingly, Defendant is not a beneficiary of the arbitration agreement under the Terms.

The Court's reading of the plain language of the arbitration agreement is also consistent with Delaware law. In *Falcon Tankers, Inc. v. Litton Sys., Inc.*, 300 A.2d 231 (Del. Super. Ct. 1972), a third party designed and manufactured pumps which were sold to the defendant and

8

JA 36

installed in a boat, owned by plaintiff, that subsequently experienced difficulties. *Id.* at 233-34. The defendant subsequently sued the third-party and the third party attempted to take advantage of an arbitration clause as between plaintiff and defendant by asserting that it was a beneficiary. *Id.* at 236. The Delaware Court held that, where the arbitration agreement was expressly between "any dispute, difference or disagreement between Buyer and Seller arising out of the performance of This [sic] Contract," the clause was not broad enough to reach the unrelated third-party. *Id.* at 237. So too here, the arbitration clause evinces no intent to include claims by the unrelated seller of information to Turn Technologies where the clause is limited to disputes between "us."

Seeking to avoid this conclusion, Defendant primarily argues that it is entitled to arbitrate under the equitable estoppel doctrine. As defined by Defendant, the Delaware equitable estoppel doctrine provides that "non-signatories are permitted to compel signatories to arbitrate disputes under [the] theory of equitable estoppel" where there are "allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one . . . of the signatories to the contract." Dkt. 45 at 18-19 (citing *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1153 (Del. Ch. 2006); *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006)). But here, there are no allegations of interdependent and concerted misconduct. *See* Dkt. 43. Rather, Plaintiff alleges *only* that Defendant, acting alone, caused Plaintiff's damages. *Id.* And, as Defendant seems to agree, at this point, Plaintiff has no claims against Turn Technologies. *See* Dkt. 45-1 ¶ 3 (referring to arbitrator's dismissal of claims against Turn Technologies); *see also Turn* Litigation, Dkt. 42, dated April 21, 2025 (D. Del.) (Notice of Voluntary Dismissal). Indeed, Plaintiff specifically alleges that, at the time he filed his claim against Turn Technologies, Plaintiff did not know of the involvement of Defendant; therefore, Plaintiff's claims against Turn Technologies similarly do not allege interdependent and concerted

9

JA 37

misconduct. *Id.* ¶ 69.   Although Defendant asserts that Plaintiff "jointly accuses Turn and InformData of failing to provide GoShare with his criminal history," Dkt. 45 at 20, Defendant points to no allegations in the FAC where Plaintiff makes such allegations.  Because Defendant cannot base its equitable estoppel theory on claims that Plaintiff has not made in this litigation, this argument fails to persuade.

Defendant argues that courts routinely apply the equitable estoppel doctrine in similar situations.  Defendant primarily relies on *Noye v. Johnson & Johnson Services, Inc.*, 765 F. App'x 742 (3d Cir. 2019), in which the Third Circuit reversed a district court's order denying a motion to compel arbitration.  But the *Noye* decision is not binding on this Court and distinguishable.  To begin with, in *Noye*, the Third Circuit applied Pennsylvania and Michigan law – not Delaware law. *Id.* at 747.  More importantly, the defendants in *Noye* were sued together, in one action, and they were "collectively accus[ed] . . . of failing to provide Noye with proper background check information." *Id.* at 748.  There is no similar allegation of collective action here.  Moreover, the Third Circuit left "to the District Court to decide whether Noye's FCRA claim against J&J is a dispute that is arbitrable under the Arbitration Agreement." *Id.*  Thus, the Third Circuit did not provide the relief that Defendant seeks here and compel arbitration.  Specifically, the Third Circuit noted that "the Arbitration Agreement speaks of who is bound to arbitrate" and, here, this Court has already determined that the arbitration agreement does not include disputes that are not "between us," meaning Plaintiff and Turn Technologies. *Id.*  The other cases cited by Defendant similarly speak to a level of "coordinated behavior" that is not alleged here.  Dkt. 45 at 19 (citing cases).  Accordingly, the Court does not find that the doctrine of equitable estoppel permits Defendant to enforce the arbitration clause – especially given that the arbitration clause specifies

10

JA 38

that it relates only to disputes "between us" referring to Plaintiff and Turn Technologies.[3] Accordingly, to the extent the Motion seeks to compel arbitration, the Motion will be denied.

Further supporting the conclusion reached here are the analyses of this very arbitration provision by another federal court and analysis of equitable estoppel by the Fourth Circuit. As Plaintiff notes, a district judge in the Middle District of Florida, held that a company in the same position as Defendant was "not an anticipated user or beneficiary of a contract for a background report" and noted that such company "benefitted from its own, separate arrangement with Turn to receive payment." *Santiago v. Neno Research, Inc.*, 2024 WL 4625783, at *7 (M.D. Fla. Oct. 30, 2024). Similarly, the *Santiago* Court, like the Court here, found that it "is inequitable to allow [Defendant to compel arbitration] when the clause limits its scope to just the parties." *Id.* at *4. Indeed, the *Santiago* Court deemed such arguments "nonsensical." *Id.* at *7. Moreover, in *Brantley v. Republic Mortgage Insurance Co.*, 424 F.3d 392 (4th Cir. 2005), the Fourth Circuit held, under South Carolina law (which applies a similar principle of equitable estoppel based on allegations "interdependent and concerted misconduct"), that equitable estoppel did not permit enforcement of an arbitration clause by a non-signatory where the plaintiffs claims did not implicate the signatory in any wrongdoing. *Id.* at 396.

In short, there is no basis to permit Defendant, a nonsignatory to the agreement, who is not a third-party beneficiary of the arbitration clause, to attempt to enforce it, where the allegations in

---

[3] Defendant professes a deep level of concern that Turn Technologies will be drawn into "costly third-party discovery" that will essentially deprive of it of the benefit of its bargain with respect to arbitration. Dkt. 45 at 21. It is unclear how this would occur when, based on the allegations of the FAC, Turn Technologies merely acted as a pass through after purchasing a report generated by Defendant. In the absence of allegations of coordination or concerted activity, the Court does not find this to be persuasive.

11

JA 39

the FAC only allege misconduct by Defendant – and no other entity. Accordingly, the Motion will be denied to the extent that it seeks to compel arbitration.

### B.    Whether This Case Should be Dismissed

As an alternative disposition to arbitration, Defendant seeks to dismiss each of the claims against it. Defendant argues that Plaintiff has failed to allege that Defendant is a consumer reporting agency ("CRA") for purposes of FCRA and that FCRA does not impose obligations on it. Separately, Defendant argues that reporting expunged convictions does not violate FCRA. Defendant also argues that Plaintiff's negligence claim is barred by the economic loss doctrine and that the defamation claim fails because its statements were substantially true. The Court will address each claim in turn.

### i.    FCRA

To prevail on a claim for violation of Section 1681e(b), a plaintiff must prove that: (1) his consumer report contains inaccurate information; (2) the CRA did not follow reasonable procedures to assure maximum possible accuracy of that consumer report; and (3) damages. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). District judges within this District recognize that, "[b]y definition, a consumer report is provided by a consumer reporting agency." *Arnold v. Cap. One Servs., Inc.*, 2011 WL 864332, at *4 (E.D. Va. Mar. 10, 2011) (citing 15 U.S.C. § 1681a(d)(1)). A consumer reporting agency as "any person which, for monetary fees, dues . . . regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information." 15 U.S.C. § 1681a(f).

Although Defendant raises a number of arguments regarding the plausibility of Plaintiff's FCRA claim, the one that bears consideration here is the argument that Defendant did not report inaccurate information. Importantly, last year, the Fourth Circuit expounded on the meaning of

12

JA 40

"inaccuracy" in the context of FCRA as a matter of first impression. *See Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 250-52 (4th Cir. 2025). In *Roberts*, the Fourth Circuit recognized that, "[w]hile defining 'accuracy' as 'not deviating from truth or accuracy' is a bit circular, these definitions reference to 'truth' suggest accuracy involves an objective inquiry." *Id.* at 251. The Fourth Circuit further referred to information as inaccurate only where it is "objectively and readily verifiable" as mistake- or error-free. *Id.* at 252. Thus, on a motion to dismiss, a plaintiff must allege factual allegations that "the inaccuracy or incompleteness is objectively and readily verifiable." *Id.* Although the *Roberts* decision addressed the use of the term "inaccurate" within a different provision of FCRA, 15 U.S.C. § 1681s-2(a), the Supreme Court has repeatedly emphasized that "identical words and phrases within the same statute should normally be given the same meaning," *Monzalvo v. Bondi*, 601 U.S. 712, 726 (2025) (citations omitted).[4]

FCRA also contains specific provisions referring to convictions. 15 U.S.C. § 1681c(a)(5) (referring to "records of convictions of crimes"). Pursuant to that provision, "convictions may be reported indefinitely." *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1185 (9th Cir. 2019); *Hope v. Dep't of Health & Human Servs.*, 2020 WL 2527032, at *5 (W.D.N.C. May 18, 2020) ("[I]nformation about Plaintiff's conviction is not subject to the seven-year limit."). Federal courts recognize that, regardless of any "diversionary disposition" or "unwinding," a finding of guilty still constitutes a conviction for purposes of FCRA and is reportable. *See, e.g., Rhodes v. First Advantage Background Servs. Corp.*, 2024 WL 4615775, at *6 (11th Cir. Oct. 30, 2024) (finding "Record 1 is a 'conviction' that is not excluded under § 1681c," even where there was a

---

[4] Moreover, in reaching its determination in *Roberts* regarding "furnishers," the Fourth Circuit relied on caselaw regarding "consumer reporting agencies" (as at issue here). 131 F.4th at 251 n.6 ("We adopt their logic here to the extent that we hold that furnishers, like consumer reporting agencies, are not required to function like full tribunals.").

13

diversionary disposition); *Aldaco v. RentGrow, Inc.*, 921 F.3d 685 (7th Cir. 2019) (holding that federal law, not state law, determines the existence of a conviction for purposes of FCRA reporting requirements, and permitting reporting of a guilty plea despite dismissal of the charges by state court after a deferral period); *Bugoni v. Emp. Background Investigations, Inc.*, 2022 WL 888434, at *3 (D. Md. Mar. 25, 2022) ("Plaintiff's 'set aside' conviction still constituted a conviction subject to reporting under FCRA."), *aff'd*, 2023 WL 3721210 (4th Cir. May 30, 2023);[5] *cf. Petros v. Campbell*, 980 F.2d 245, 249-51 (4th Cir. 1992) (holding that a deferred sentence of probation still constitutes a "prior conviction" for purposes of federal sentencing enhancements, although it was not a conviction under Virginia law).  Indeed, the Supreme Court has held that, where a statute speaks of a "conviction" without a "modifier" or anything to suggest a "restriction on the scope of the term 'convicted,'" an "expunction" of that conviction did not change the fact of conviction. *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111-16 (1983), *superseded by statute as stated in Logan v. United States*, 552 U.S. 23 (2007).

Thus, applying the principles announced in these "conviction" cases, Plaintiff's expunged convictions still constitute convictions.  *See Bugoni*, 2022 WL 888434, at *3 ("Plaintiff's 'set aside' conviction still constituted a conviction subject to reporting under FCRA.").  Although not addressed specifically by the caselaw, the Court further notes that the precise language used by Section 1681c(a)(5) is not just "convictions" but "*records of* convictions of crimes."  15 U.S.C. § 1681c(a)(5) (emphasis added).  Interpreting the plain language of this provision, regardless of

---

[5] *See also Peeples v. Nat'l Data Research, Inc.*, 2024 WL 1476201 (adopting magistrate recommendation that "the definition of the term 'conviction' by federal courts" means "that the Report accurately reported Plaintiff's prior [expunged] conviction"), *vacated on other grounds*, 2025 WL 268441 (11th Cir. Sept. 19, 2025); *Obabueki v. Choicepoint, Inc.*, 236 F. Supp. 2d 278, 283-84 (S.D.N.Y. 2002), *aff'd sub nom.* 319 F.3d 87 (2d Cir. 2003) ("Requiring that credit reporting agencies not report convictions that have been set aside would . . . be equivalent to 'judicially mandated prevarication.'").

14

whether an expunged offense still constitutes a "conviction," records regarding that expunged conviction would still constitute "*records* of convictions of crimes." Furthermore, applying the Fourth Circuit's explanation of the meaning of "inaccurate" for purposes of FCRA, failing to report the later expungement is not inaccurate, because, as Plaintiff himself pleads, there are no public records of the expungement. *See* Dkt. 43 ¶ 55 (citing 11 Del. Code § 4372(e)(1)) (providing for the removal of the criminal records by the court and permitting the court to retain only "a nonpublic record of expungement"). Thus, under *Roberts*, the alleged inaccuracy – or really incompleteness as argued by Plaintiff – could not be verified by Defendant because there was no record of expungement. *Roberts*, 131 F.4th at 252.

Plaintiff argues that Defendant was required to "indicate that the criminal records were expunged and pardoned," Dkt. 49 at 26, but the FAC alleges that Defendant did not have access to the information necessary to make such a determination (Dkt. 43 ¶ 55), and the Fourth Circuit has held that companies, like Defendant, are not "tribunals" and are not required to "make the kind of determinations about disputes that courts make," *Roberts*, 131 F.4th at 251 & n.6. Essentially, Plaintiff argues that Defendant had stale information and should have known that it was stale but also acknowledges that Defendant lacked access to the information to make the record more complete. Thus, this Court joins the *Bugoni* decision from this Circuit and finds that reporting the expunged convictions was not inaccurate.[6]

---

[6] To the extent that Plaintiff argues that Defendant's report was misleading because it "report[ed] Plaintiff's records as *current* public record information," Dkt. 49 at 28, the FAC makes no such allegation regarding Defendant's representations about the currentness of the information in the report, Dkt. 43. And, it is axiomatic that a Plaintiff may not amend his complaint in opposition to a motion to dismiss. *Sansone v. U.S. Patent & Trademark Off.*, 2025 WL 696527, at *4 (E.D. Va. Mar. 4, 2025).

15

Seeking to avoid this conclusion, Plaintiff cites a number of cases (but does not attempt to discuss or distinguish *Roberts* or *Bugoni*). Dkt. 49 at 26. The cases cited by Plaintiff are inapposite, not binding, and fail to persuade. As the Fourth Circuit recognized in *Roberts*, its prior decision in *Saunders v. Branch Banking and Trust Company of Virginia*, 526 F.3d 142 (4th Cir. 2008), does not "provide the full contours of what completeness and accuracy mean." 131 F.4th at 250 (citing *Saunders*, 526 F.3d at 150). Other cases cited by Plaintiff relate to whether there is Article III standing, rather than whether there is an actionable inaccuracy. *See Clark v. Trans Union, LLC*, 2016 WL 7197391, at *9-11 (E.D. Va. Dec. 9, 2016) (finding that plaintiff alleged an injury in fact); *Stokes v. Realpage, Inc.*, 2016 WL 6095810, at *7 (E.D. Pa. Oct. 19, 2016) (finding that plaintiffs have standing to pursue their claims). As to *Doe v. Trinity Logistics, Inc.*, 2018 WL 1610514 (D. Del. Apr. 3, 2018), Plaintiff cites from the "Background" section of the opinion, which recites plaintiff's allegations, rather than any determination by the court that information was inaccurate under FCRA. *Id.* at *4 (Background); Dkt. 49 at 47 (quoting from the Background section). The substance of the *decision* in the *Doe* case was the denial of a motion to strike class claims and the denial of a motion to dismiss a claim under 15 U.S.C. § 1681b(f), neither of which is at issue here. *Doe*, 2018 WL 1610514, at *13. Thus, Plaintiff's arguments in this regard are not persuasive.

In short, because Plaintiff has not plausibly alleged that Defendant reported inaccurate information under FCRA, as construed by the Fourth Circuit and other district judges in this Circuit, the Motion will be granted.

### ii. Negligence

"The tort of negligence contains the elements of: 1) duty, 2) breach, 3) causation, and 4) damages." *Hall v. Dorsey*, 1998 WL 960774, at *2 (Del. Super. Ct. Nov. 5, 1998). Defendant

16

argues that, under Delaware law, "[t]he economic loss doctrine precludes negligence claims for losses that are purely monetary or economic, that is divorced from injury to person or property." *Bray v. Gamestop Corp.*, 2018 WL 11226516, at \*4 (D. Del. Mar. 16, 2018). Here, Plaintiff alleges that he has suffered economic harm, psychological harm, and reputational harm, and he seeks punitive damages. Dkt. 43 ¶¶ 128-129. Defendant cites a number of cases applying the economic loss doctrine to dismiss negligence cases where the only damages alleged are economic. *See* Dkt. 45 at 33 (citing cases). Similarly, other federal courts – including district courts within this Circuit – have held that the economic loss doctrine bars negligence claims for economic harms asserted in conjunction with FCRA claims. *See, e.g.*, *Fryfogle v. First Nat'l Bank of Greencastle*, 2009 WL 700161, at \*7 (W.D. Va. Mar. 17, 2009) (finding, under Pennsylvania law, that the economic loss doctrine required dismissal of negligence claim). Thus, the Court finds that Delaware's economic loss doctrine precludes Plaintiff's negligence claim for purely economic damages.

In Opposition, Plaintiff relies upon a single, unpublished case from Delaware Superior Court. Dkt. 49 at 27 (citing *Doe v. Bayhealth Med. Ctr., Inc.*, 2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025)). The *Bayhealth* case was a medical data breach case and the court there placed heavy emphasis on the "loss of privacy harms" in such cases. *Id.* at \*8. In so doing, the court essentially created an exception to Delaware's long-established economic loss doctrine. But, even assuming that Delaware's highest court would approve of such an exception, the factual basis for that exception is not applicable here. This is not a data breach case with special considerations of privacy. Indeed, Plaintiff makes no attempt at asserting that he has any such special privacy interest in an expunged criminal conviction and a review of the cases cited by Defendant establishes that "an offender has no protected privacy interest in expunged criminal records." *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011) (collecting cases). As the Eighth Circuit has recognized,

17

JA 45

this is so because expungement cannot "permanently erase from the public record those affairs that take place in open court." *Eagle v. Morgan*, 88 F.3d 620, 625-26 (8th Cir. 1996). And, as the Third Circuit has explained, "because references to a defendant's criminal conduct may persist in public news sources after expungement, the information expunged is never truly 'private.'" *Nunez v. Pachman*, 578 F.3d 228, 229 (3d Cir. 2009). Accordingly, Plaintiff's argument in this regard does not save his negligence claim, and it will be dismissed pursuant to the economic loss doctrine.[7]

### iii.    Defamation

The elements of a defamation claim in Delaware are: "(1) a false and defamatory communication concerning the plaintiff, (2) publication of the communication to third parties, (3) understanding of the defamatory nature of the communication by the third party, (4) fault on the part of the publisher, and (5) injury to the plaintiff." *Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299, 1307 (D. Del. 1994); *see also Delaware Express Shuttle, Inc., v. Older*, 2002 WL 31458243, at *3 (Del. Ch. 2000). Additionally, "[u]nder Delaware law there is no liability for defamation when a statement is determined to be true." *Holmes v. The News Journal Co.*, 2015 WL 1893150, at *3 (Del. Super. Apr. 20, 2015) (citing *Riley v. Moyed*, 529 A.2d 248, 253 (Del.

---

[7] To the extent that Plaintiff argues that his allegation of "loss of sleep" is sufficient to allege a non-economic harm, courts applying the economic loss doctrine have rejected his argument. *See, e.g., Widjaja v. JPMorgan Chase Bank, N.A.*, 2020 WL 2949832, at *8 (C.D. Cal. Mar. 31, 2020) (dismissing, under California's economic loss rule, negligence claim premised on similar allegations of anxiety and lack of sleep); *Saleh v. Merch.*, 2018 WL 287748, at *9 (N.D. Ill. Jan. 4, 2018) (dismissing, under Illinois's economic loss rule, negligence claims premised on similar allegations of anguish and lack of sleep).

18

1987)).  Here, Plaintiff's own allegations undermine his defamation claim and, thus, his claim will be dismissed.

Plaintiff has alleged that he had criminal convictions in Delaware.  Dkt. 43 ¶ 51.  Thus, any report by Defendant regarding those convictions was true, and Plaintiff does not allege otherwise. Plaintiff argues that Defendant "purported to report Plaintiff's expunged records as current public record information in connection with Plaintiff's employment background check."  Dkt. 45 at 28. But that is not what Plaintiff has alleged.  Plaintiff alleged that Defendant "sold and reported pertinent details of the criminal records that have been *expunged*."  Dkt. 43 ¶ 76 (emphasis in original).  Moreover, Plaintiff cites no authority for the proposition that accurately reporting on a criminal conviction that was expunged is defamatory.  This is likely for good reason, as the Second Circuit has recognized, expungement "creates legal fictions, but it does not and cannot undo historical facts or convert once-true facts into falsehoods." *Martin v. Hearst Corp.*, 777 F.3d 546, 551 (2d Cir. 2015); *see also Lueckenbach v. Horizon Mississippi Publications, Inc.*, 2017 WL 473903, at *2 (N.D. Miss. Feb. 3, 2017) ("The fact that the charge was ultimately dropped and expunged has no bearing on the truth of the undisputed fact . . . ."); *G.D. v. Kenny*, 15 A.3d 300, 313-16 (N.J. 2011) ("[T]he expungement statute does not transmute a once-true fact into a falsehood."); *Bahr v. Statesman Journal Co.*, 624 P.2d 664, 666-67 (Or. Ct. App. 1981) ("Because plaintiff admitted in his complaint that he had been convicted," it necessarily follows that "defendant's statement that plaintiff had been convicted was true[.]").  Here, Plaintiff's own allegations establish that the fact he had a criminal record is substantially true.   Because the truth of Defendant's statements is clear from the FAC, dismissal of the defamation claim is appropriate. *See, e.g., Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850-51 (4th Cir. 2016) (noting that a

19

JA 47

claim can be dismissed "if the face of the complaint includes all necessary facts for [a] defense to prevail").

IV. CONCLUSION

In short, Plaintiff has failed to allege facts to establish the inaccuracy of Defendant's reporting of Plaintiff's convictions under either FCRA or Delaware defamation law. Moreover, Plaintiff has failed to allege any non-economic harms such that he can state a negligence claim under Delaware's economic loss doctrine. Thus, Plaintiff has failed to plausibly state any claim.

Accordingly, it is hereby ORDERED that the Motion (Dkt. 44) is GRANTED-IN-PART and DENIED-IN-PART. The Motion is GRANTED as to the motion to dismiss for failure to state a claim. The Motion is DENIED as to the motion to compel arbitration; and it is

FURTHER ORDERED that the action is DISMISSED and the Clerk of the Court is DIRECTED to place the matter among the ended causes.[8]

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED.

Alexandria, Virginia
March 11, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge

---

[8] Given this Court's rulings here, it appears futile to permit amendment of Plaintiff's claims. Even if Plaintiff could conceivably amend his negligence claim to avoid the economic loss doctrine, the Court would decline to exercise supplemental jurisdiction over such a claim. *See* 28 U.S.C. § 1367(c); *see also Alston v. Anderson*, 2023 WL 416197, at *7 (E.D. Va. Jan. 25, 2023) (recognizing that, when claims are dismissed in the early stages of the litigation, the "values of judicial economy, convenience, fairness, and comity" weigh in favor of dismissing the remaining state law claims).

JA 48

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

HARRY SMITH,

        Plaintiff,

v.

INFORMDATA, LLC f/k/a WHOLESALE
SCREENING SOLUTIONS, LLC,

        Defendant.

Civil Action No. 1:25-cv-00826-RDA-WEF

### NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN,** pursuant to Federal Rules of Appellate Procedure 3(c)(1) and 4(a)(1)(A), that Plaintiff Harry Smith ("Plaintiff"), by and through undersigned counsel, hereby appeals to the United States Court of Appeals for the Fourth Circuit from the United States District Court for the Eastern District of Virginia's Memorandum Opinion and Order (Docket No. 51) entered in this action on March 11, 2026.

DATED this 6th day of April 2026.

Respectfully submitted,

**HARRY SMITH**

           */s/*

Susan M. Rotkis, VSB 40693
**CONSUMER JUSTICE LAW FIRM**
2290 East Speedway Boulevard
Tucson, Arizona 85719
Telephone: (602) 807-1504
Fax: (480) 613-7733
Email: srotkis@consumerjustice.com

*Attorneys for Plaintiff Harry Smith*

1

JA 49

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

_/s/_
_____

Susan M. Rotkis, VSB 40693
**CONSUMER JUSTICE LAW FIRM**
2290 East Speedway Boulevard
Tucson, Arizona 85719
Telephone: (602) 807-1504
Fax: (480) 613-7733
Email: srotkis@consumerjustice.com

_Attorneys for Plaintiff Harry Smith_

2

JA 50

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. Counsel for Defendant-Appellee are registered CM/ECF users and will be served by the CM/ECF system.

Dated: July 2, 2026

*/s/ Susan Mary Rotkis*
Susan Mary Rotkis
**CONSUMER JUSTICE LAW FIRM**

*Counsel for Plaintiff-Appellant*
*Harry Smith*