# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**JOHN DOE**,

*Plaintiff-Appellant,*

v.

**INFORMDATA, LLC,**

*Defendant-Appellee.*

On Appeal from the United States District Court for the Eastern District of Virginia, Case No. 1:25-CV-00826-RDA-WEF

**BRIEF OF *AMICI CURIAE* COMMUNITY LEGAL SERVICES, THE CLEAN SLATE INITIATIVE, THE RESPONSIBLE BUSINESS INITIATIVE FOR JUSTICE IN SUPPORT OF APPELLANT**

Kristi C. Kelly, VSB #72791
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7570
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com

*Counsel for Community Legal Services,
The Clean Slate Initiative, The
Responsible Business Initiative for
Justice*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by all parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-1491        Caption: Doe v. Informdata, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Community Legal Services, Inc.; The Clean Slate Initiative, Inc.; The Responsible Business Initiative for Justice
(name of party/amicus)

who is Amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?
                                                                __ YES  X NO
2.    Does party/amicus have any parent corporations? ___ YES  X NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ___ YES  X  NO
      If yes, identify all such owners:

i

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
___ YES  X̲  NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amicus curiae do not complete this question)
___ YES  ___ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ___ YES  X̲  NO
If yes, identify any trustee and the members of any creditors' committee:

7. Is this a criminal case in which there was an organizational victim?
___ YES  X̲  NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Kristi C. Kelly    Date: July 9, 2026

Counsel for: Community Legal Services, Inc.; The Clean Slate Initiative, Inc.; The Responsible Business Initiative for Justice

**TABLE OF CONTENTS**

**Page**

DISCLOSURE STATEMENT ...........................................................................i

TABLE OF AUTHORITIES ........................................................................iv

STATEMENT OF INTEREST ......................................................................1

INTRODUCTION.......................................................................................3

ARGUMENT ..............................................................................................5

    A.    Criminal Records Create Barriers to Opportunities for Millions of Americans........................................................................................5

    B.    The Expansion of the Background Checking Industry Exacerbates the Impact of Criminal Records as Barriers .....................9

    C.    State-Level Legislation and Court Orders Restricting Access and Use of Criminal Records Should Be Given Its Full Intended Effect.................................................................................10

        i. Pennsylvania's Clean Slate Law Is an Example of a Collaborative, State-level Solution to the Criminal Records Problem. ..............................................................................................11

        ii. Bipartisan Support for Clean Slate Legislation Underlies the Nationwide Trend Towards Record Sealing Expansion, Including in States Within the Fourth Circuit...................................15

        iii. Clean Slate and Other State Record Clearing Laws Will Be Undermined By the District Court's Interpretation of the FCRA..............................................................................................21

CONCLUSION ........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Peake v. Com.*, 132 A.3d 506 (Pa. Commw. 2015) (No. 216 M.D 2015) ................7

**STATUTES**

18 Pa.C.S. §9121 ..........................................................................................12

18 PA.C.S. §9122.2 ................................................................................11, 12

Act of June. 28, 2018, P.L. 402, No. 56 ...............................................11

D.C. Code § 16-805..........................................................................................15

Va. Code Ann. §§ 19.2-392.6, 19.2-392.7 ..........................................15

**OTHER AUTHORITIES**

Ariel Nelson, *Broken Records Redux: How Errors by Criminal Background Check Companies Continue to Harm Consumers Seeking Jobs and Housing*, National Consumer Law Center (2019), *available at* https://www.nclc.org/resources/report-broken-records-redux/ ........................5, 10

Beth Avery, *Fair Chance Hiring for Employers Part Six: Shifting Background Screening Goals from Exclusion to Inclusion*, National Employment Law Project (2023), *available at* https://www.nelp.org/app/uploads/2023/08/Policy-Brief-6-Limit-additional-record-screening.pdf.................................................................7

Center for American Progress, *Clean Slate*, https://www.americanprogress.org/topic/clean-slate/ ........................................16

The Clean Slate Initiative, *Bipartisan Lawmakers Reintroduce Legislation to Advance Second Chances at Federal and State Levels* (Apr. 30, 2025), https://www.cleanslateinitiative.org/in-the-news/csa-fsa-intro-2025 ..................17

The Clean Slate Initiative, *Clean Slate in States*, https://www.cleanslateinitiative.org/states (last visited June 8, 2026) ..........15, 16

The Clean Slate Initiative, *Population Estimates to Maximize Policy Impact: The Clean Slate Initiative Methodology for Estimating State Populations with a Record* (2024), https://www.cleanslateinitiative.org/data-methodology ......................................................................16, 19, 20

The Clean Slate Initiative, *Our Data Dashboard*, https://www.cleanslateinitiative.org/data (last visited June 8, 2026) ...................16

Complete Legislative Action History for S.B. 1421, Mo. Senate, https://www.senate.mo.gov/BillTracking/Bills/BillInformation?billId=8214&billPrefix=SB&billSuffix=1421&handler=Actions&year=2026 (last visited June 8, 2026) .........................................................................................................15

Devah Pager, Bruce Western & Naomi Sugie, *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 Annals of the Am. Acad., 195, 199 (2009), *available at* https://scholar.harvard.edu/files/pager/files/annals_sequencingdisadvantage.pdf .......................6

Devah Pager & Bruce Western, Nat'l Inst. of Justice, *Investigating Prisoner Reentry: The Impact of Conviction Status on the Employment Prospects of Young Men* 4 (2009)............................................................................................6

Devah Pager, *The Mark of a Criminal Record*, 108 Am. J. Soc. 937 (2003) ...........7

Eric Levenson, "Inside the 'Clean Slate' Record-Sealing Movement Growing in Both Red and Blue States," CNN (May 30, 2026), https://www.cnn.com/2026/05/30/us/clean-slate-reform-movement ..................16

Jenny Roberts, *Expunging America's Rap Sheet in the Information Age*, Wash. C.L. Res. Paper No. 2015-3 (2015)...................................................................9

J.J. Prescott & Sonja B. Starr, *Expungement of Criminal Convictions: An Empirical Study*, 133 Harv. L. Rev. 2460 (2020) ................................................18

JPMorgan Chase & Co. Policy Center, *Giving People with Criminal Backgrounds a Second Chance* (last visited July 8, 2026), https://www.jpmorganchase.com/content/dam/jpmc/jpmorgan-chase-and-co/documents/jpmc-policycenter-overview-v1-ada.pdf ............................................................................................13

Laura Chavez, *New Research: How Clean Slate Won in Pennsylvania and Utah — and What Other States Can Learn*, The Clean Slate Initiative (August 15, 2025), https://www.cleanslateinitiative.org/updates/how-clean-slate-won-in-pennsylvania-and-utah ...................................................................................12

Laura Chavez, *The Impacts of Clean Slate Laws in Pennsylvania, Utah, and Michigan*, The Clean Slate Initiative (2024)*, available at*: https://www.cleanslateinitiative.org/research-data-publications/yougov-survey-report ...................................................................................17, 18, 19

Lewis Maltby and Roberta Meyers Douglas, *Second Chance Employment: Addressing Concerns About Negligent Hiring Liability*, Legal Action Center (2023), *available at* https://www.lac.org/resource/second-chance-employment-report ...................................................................................7

Lucas Caldwell-McMillan, 2026 Legislative Session Recap, Empower Mo. (May 19, 2026), https://empowermissouri.org/2026-legislative-session-recap/ ...........16

Mike Doner, "Clean Slate Legislation is Key to Removing Barriers to Employment and Strengthening Communities," Baltimore Post-Examiner (March 8, 2024), https://baltimorepostexaminer.com/clean-slate-legislation-is-key-to-removing-barriers-to-employment-and-strengthening-communities/2024/03/08 ................13

Nat'l Center for State Courts, *Privacy/Public Access to State Courts: State Links, available at* http://www.ncsc.org/topics/access-and-fairness/privacy-public-access-to-court-records/state-links.aspx ...........................................................9

Nicholas Phillips, "Clean-Slate Legislation in Missouri Sees Bipartisan Push," St. Louis Mag. (Apr. 15, 2025, 9:55 AM, updated Apr. 18, 2025), https://www.stlmag.com/news/solutions/clean-slate-missouri/ ..........................15

Nila Bala, *Why Conservatives Should Support Clean Slate Initiatives*, R Street Inst. (Oct. 31, 2019), https://www.rstreet.org/research/why-conservatives-should-support-clean-slate-initiatives/ ...................................................................16

PA Chamber of Business and Industry, *Expanding Clean Slate: Good for Employers, Reentrants and Pennsylvania's Future Workforce* (last visited June 29, 2026), https://www.pachamber.org/media/7302/expanding_clean_slate_good_for_employers_reentrants_and_pennsylvanias_future_workforce/ ...........12

PALawHelp.org, *Clean Slate 3.0 Enacted into Law - Allows Sealing of Some Old Felony Criminal Records* (Last visited June 29, 2026), https://www.palawhelp.org/resource/clean-slate-30-enacted-into-law-allows-sealing-of-some-old-felony-criminal-records .......................................................14

Responsible Business Initiative for Justice, *2025 Impact Report*, https://www.rbij.org/impact ...............................................................................13

Robert Stewart and Christopher Uggen, *Criminal records and college admissions: A modified experimental audit*, Criminology (2019), *available at* https://onlinelibrary.wiley.com/doi/full/10.1111/1745-9125.12229......................5

Roy Maurer, *More Employers Letting Candidates Explain Conviction Records*, Soc'y for Human Res. Mgmt. (May 15, 2015), *available at* http://www.shrm.org/hrdisciplines/staffingmanagement/articles/pages/candidates-explain-conviction-records.aspx...................................................................9

Sentencing Project & Half in Ten, *Americans with Criminal Records: Poverty and Opportunity Profile* (2014), https://www.sentencingproject.org/app/uploads/2022/08/Americans-with-Criminal-Records-Poverty-and-Opportunity-Profile.pdf .........................................................................................................19

Small Business Majority, *Small business owners support criminal justice reforms to address persistent workforce challenges* (2022), *available at* https://smallbusinessmajority.org/our-research/small-business-owners-support-criminal-justice-reforms-address-persistent-workforce-challenges.......................9

U.S. Dep't of Justice, Bureau of Justice Statistics, *Survey of State Criminal History Information Systems* 3 (2014), *available at* https://www.ncjrs.gov/pdffiles1/bjs/grants/244563.pdf. .....................................................................................5

**STATEMENT OF INTEREST[1]**

Community Legal Services, Inc. (CLS) was founded by the Philadelphia Bar Association in 1966 as an independent 501(c)(3) organization to provide free legal services in civil matters to low-income Philadelphians. Since its founding, CLS has served more than one million clients who could not afford to pay for legal representation. CLS has prioritized providing extensive services to people with criminal records for nearly two decades. It has been at the cutting edge of issues surrounding the civil consequences of criminal records, including the impact of records on employment, housing, and education.

CLS also assists hundreds of Philadelphians each year with clearing up their records through the expungement, sealing, and pardon processes. CLS advocated for Pennsylvania's bi-partisan Clean Slate law, which became the first in the nation to automate the process of sealing millions of criminal records. CLS is a national leader on criminal record clearing, and has launched the National Record Clearing Project through which it provides nationwide support to civil legal services and other organizations that are seeking to start or expand their record clearing programs.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E) and Local Rule 29, *amici* certify that no counsel for a party authored this brief in whole or in part, and no person other than *amici curiae*, their members, or their counsel made a monetary contribution to the preparation or submission of this brief.

The Clean Slate Initiative, Inc. (CSI) is a national, bipartisan nonprofit organization that works to pass and implement automated record sealing legislation at the state and federal levels. To date, 13 states and Washington, D.C., have passed automated record sealing laws, and as a result, an estimated 18 million people are on the path to having meaningful access to opportunity once those laws are fully implemented.

From state-level victories to federal momentum, groundbreaking research, and impactful narrative change efforts, CSI helps drive second chances for people across the country. While each state has a way to seal eligible arrest and conviction records through a petition process, it is often complex and costly to do so – deterring millions of people eligible under current expungement laws from pursuing this process. These challenges extend beyond individuals, creating a ripple effect that impacts families, weakens communities, and hinders economic growth. By passing and implementing automated record sealing policies, CSI helps states to streamline the records relief process and shift the burden from the person who has a record to the system that holds that record over their head.

Founded in 2018, The Responsible Business Initiative for Justice (RBIJ) is fiscally sponsored by NEO Philanthropy, Inc., 501(c)(3) nonprofit organization. RBIJ works with over 700 companies to champion solutions that promote public safety, deliver justice, and strengthen communities. RBIJ convenes

a network off businesses in the Workforce and Justice Alliance to offer peer to peer learning, share experiences, and lift the public narrative that businesses are committed to creating inclusivity in the workplace. Since its inception, RBIJ has engaged hundreds of businesses across multiple states to advocate for criminal record reform.

## INTRODUCTION

The District Court erred in this matter when it found that Plaintiff had not plausibly alleged a violation of the Fair Credit Reporting Act when a credit reporting agency reported as publicly available information a criminal case that had been pardoned and expunged by the state of Delaware. This Court must find it unlawful for credit reporting agencies to report as publicly available criminal record information that has been expunged, sealed or pardoned by the states. To find otherwise would be a misreading of the text of the Fair Credit Reporting Act (FCRA) and would interfere with the Constitutional province of the states to determine when criminal record information should no longer be accessible publicly and should no longer prevent individuals from being able to access jobs, housing, and more.

The negative impacts of criminal records on access to employment, housing, and educational opportunities in the United States are well documented. The barriers posed by criminal records are only increased by the recent expansion of the background checking industry, providing easy access to criminal record information.

Bipartisan efforts, supported by the business community, to address these barriers and their impacts on individuals, communities, and the economy have led to the expansion of record clearing laws across many states nationwide.

As legal representatives for people with criminal records and advocates for expanding access to record clearing relief, *amici* recognize the importance of the FCRA as a legal tool for individuals to ensure that their background information, including any public criminal records, are reported accurately. When criminal records are expunged or otherwise removed from public view under the laws of the states, state legislatures, courts, and individuals with records expect that these records can no longer be reported publicly under consumer protection laws. In fact, that is the very purpose of these record clearings laws being passed in the first place. This Court must overturn the District Court's decision in this matter. To do otherwise would exacerbate the negative impact of criminal records on access to opportunities such as employment and housing and would frustrate the Constitutional autonomy of state legislatures and courts to decide when criminal record information can no longer be made public.

**ARGUMENT**

**A.     Criminal Records Create Barriers to Opportunities for Millions of Americans.**

The Department of Justice estimates that seventy to one hundred million American adults have a criminal record, or one in three adults.[2] The easy access to criminal records via an expanding and increasingly automated record checking industry creates significant burdens on individuals across the United States. This is especially true for individuals and communities of color, who have long been arrested, convicted, and incarcerated at disproportionately high rates.

The presence of even a minor criminal record—including arrests that did not result in conviction—can harm individuals' ability to obtain employment, housing, and educational opportunities. Data suggest that around 94% of employers, 90% of landlords, and 72% of colleges and universities use criminal background checks to screen out applicants with records.[3]

---

[2] U.S. Dep't of Justice, Bureau of Justice Statistics, *Survey of State Criminal History Information Systems* 3 (2014), *available at* https://www.ncjrs.gov/pdffiles1/bjs/grants/244563.pdf.

[3] *See* Ariel Nelson, *Broken Records Redux: How Errors by Criminal Background Check Companies Continue to Harm Consumers Seeking Jobs and Housing*, National Consumer Law Center (2019), *available at* https://www.nclc.org/resources/report-broken-records-redux/; Robert Stewart and Christopher Uggen, *Criminal records and college admissions: A modified experimental audit*, Criminology (2019), *available at* https://onlinelibrary.wiley.com/doi/full/10.1111/1745-9125.12229.

Through its work providing direct legal services to job applicants, *amicus* Community Legal Services (CLS) has directly witnessed the widespread impact of employment barriers created by criminal records. Our clients regularly experience difficulties in finding and keeping employment due to old and unrelated records alone. Indeed, our clients often receive job offers and start training and work with no issues, and subsequently lose the job opportunity after a flagged background check reveals years-old records unrelated to the job duties. Over two thirds of all low-income individuals who seek out CLS's employment law services each year – over 2,000 people per year – are seeking assistance with barriers to employment or housing caused by criminal records.

Research confirms CLS's experiences. The existence of a criminal record reduces the likelihood of a callback or job offer by nearly 50 percent, with an even more pronounced effect on Black applicants than white applicants.[4] One study found that the "criminal records penalty suffered by white applicants (30%) is roughly half the size of the penalty for blacks with a record (60%)."[5] Moreover, white men with a felony record were half as likely as white men without a record to receive a

---

[4] Devah Pager, Bruce Western & Naomi Sugie, *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 Annals of the Am. Acad., 195, 199 (2009), a*vailable at* https://scholar.harvard.edu/files/pager/files/annals_sequencingdisadvantage.pdf.

[5] Devah Pager & Bruce Western, Nat'l Inst. of Justice, *Investigating Prisoner Reentry: The Impact of Conviction Status on the Employment Prospects of Young Men* 4 (2009).

callback after applying for a job, while African Americans with a felony record were only one third as likely to receive a callback as those without a record.[6]

Many employers are hesitant to hire people with publicly available criminal records because they fear reproach or even legal liability. While few cases of negligent hiring are brought and even fewer successful,[7] employers are typically risk adverse actors. Even a perceived risk can lead them to choose not to hire a candidate when the background check includes any criminal history, even minor infractions or arrests without convictions. In jurisdictions with fair chance hiring laws, the existence of the criminal record can still result in the loss of the employment opportunity if employers feel that the negligent hiring risk is greater than the risk of violating fair chance hiring ordinances.[8]

Research shows, however, that individuals with older criminal records "pose very little risk of reoffending and do not differ meaningfully from the risk posed by

---

[6] Devah Pager, *The Mark of a Criminal Record*, 108 Am. J. Soc. 937, 955-957 (2003).

[7] Lewis Maltby and Roberta Meyers Douglas, *Second Chance Employment: Addressing Concerns About Negligent Hiring Liability*, Legal Action Center (2023), *available at* https://www.lac.org/resource/second-chance-employment-report.

[8] Beth Avery, *Fair Chance Hiring for Employers Part Six: Shifting Background Screening Goals from Exclusion to Inclusion*, National Employment Law Project (2023), *available at* https://www.nelp.org/app/uploads/2023/08/Policy-Brief-6-Limit-additional-record-screening.pdf ("Despite laws mandating the contrary, employers often deny jobs to people with records— who are disproportionately Black, Latinx, and Indigenous—based on convictions that are old or not related to the position sought.").

members of the general population." Nakamura Declaration at 4-5, *Peake v. Com.*, 132 A.3d 506 (Pa. Commw. 2015) (No. 216 M.D 2015). Rather, "[t]he value of criminal records in predicting future criminality diminishes with time and becomes virtually irrelevant after a maximum of no more than seven years for individuals with single convictions, and no more than ten years for those with multiple convictions – and even less time for individuals with non-violent offenses." *Id.* Even so, *amicus* CLS regularly encounters employers who deny employment to individuals with very old or very minor records completely unrelated to the jobs sought. These old and minor records are also the type of records likely to be eligible for pardons, expungement, or sealing.

Federal, state, and local employment discrimination protections often prohibit employers from taking adverse action based on stale or unrelated criminal records, or at least require individualized assessments of job applicants before considering the record. In the experience of CLS, however, once records are reported publicly to employers, enforcement of these protections is often challenging or impractical. Guidance to employers on how to consider publicly available criminal records is often confusing and puts employers in the difficult position of having to determine whether an individual's criminal record poses a risk or not. For these and other reasons, employers and the broader business community have generally been supportive of record clearing laws. A 2022 poll of small business owners showed

84% support criminal record reforms to remove barriers to employment for formerly incarcerated individuals.[9]

### B. The Expansion of the Background Checking Industry Exacerbates the Impact of Criminal Records as Barriers.

The increase in access to criminal records in recent years has only heightened the impact of criminal records as barriers to employment, housing, and educational opportunities. In the past, an employer or landlord would have to go to a local courthouse to view a physical file to find out whether a job applicant or potential tenant had a criminal record. Now, due to advances in technology and the resulting rise and expansion of a multi-billion-dollar background check industry, employers, landlords, and credit reporting agencies are able to easily access criminal records online or through the selling of electronic databases.[10] As a result, employer use of background check information is now widespread: 90 percent of responding employers in a survey stated that they subjected all or some of their job candidates to criminal background checks.[11]

---

[9] Small Business Majority, *Small business owners support criminal justice reforms to address persistent workforce challenges* (2022), *available at* https://smallbusinessmajority.org/our-research/small-business-owners-support-criminal-justice-reforms-address-persistent-workforce-challenges.

[10] *See* Nat'l Center for State Courts, *Privacy/Public Access to State Courts: State Links, available at* http://www.ncsc.org/topics/access-and-fairness/privacy-public-access-to-court-records/state-links.aspx; Jenny Roberts, *Expunging America's Rap Sheet in the Information Age*, Wash. C.L. Res. Paper No. 2015-3 (2015).

[11] Roy Maurer, *More Employers Letting Candidates Explain Conviction Records*, Soc'y for Human Res. Mgmt. (May 15, 2015), *available at*

Worse still, criminal background checks often contain serious and fundamental errors and inaccuracies. Background checking companies often run automated searches through large databases of aggregated criminal records information to generate reports requested by employers and landlords, which result in accuracy errors such as mismatch of the subjects, inclusion of cleared records, omission of disposition information, and misclassification of reported offenses, among others.[12] The increased access to background checking reports without strong guardrails for the accuracy of these reports unfairly exacerbates the effect of the criminal record report as barriers for individuals with records.

### C. State-Level Legislation and Court Orders Restricting Access and Use of Criminal Records Should Be Given Its Full Intended Effect.

As laboratories of democracies, individual states across the nation have sought to address the sweeping personal and economic consequences of criminal records by passing legislation restricting access to and use of certain records through expungement and sealing laws. Consumer reporting agencies should not be allowed to report records that have been determined by state legislatures and state courts to no longer be publicly accessible.

---

http://www.shrm.org/hrdisciplines/staffingmanagement/articles/pages/candidates-explain-conviction-records.aspx.

[12] *See* Ariel Nelson, *Broken Records Redux: How Errors by Criminal Background Check Companies Continue to Harm Consumers Seeking Jobs and Housing*, National Consumer Law Center (2019).

### i. Pennsylvania's Clean Slate Law Is an Example of a Collaborative, State-Level Solution to the Criminal Records Problem.

In Pennsylvania, *amici* advocated for the passing of the first "Clean Slate" law of its kind in the nation in 2018. Pennsylvania's Clean Slate law seals non-conviction records and other minor and old conviction records from public view through an automated process. 18 PA.C.S. § 9122.2. In addition to automated sealing, Pennsylvania law has also expanded the types of convictions that can be sealed via petition to a court. 18 Pa.C.S. § 9122.1. The stated purpose of record clearing laws such as Pennsylvania's Clean Slate legislation is to ensure access to employment, housing, and education for people who have old and minor conviction records by limiting access and use of these records. Pennsylvania has codified this intent into law. Act of June. 28, 2018, P.L. 402, No. 56 ("The General Assembly finds and declares as follows…After less violent individuals convicted of crimes have served their sentences and remained crime free long enough to demonstrate rehabilitation, the individuals' access to employment, housing, education and other necessities of life should be fully restored."). In addition to limiting access to sealed records by non-criminal justice agencies, Pennsylvania's law also explicitly prohibits the *use* of sealed records by any individual or non-criminal justice agency, including commercial background checking companies, for employment and housing

purposes. 18 Pa.C.S. § 9121(b.1), (b.2); 18 Pa.C.S. § 9122.5; 18 Pa. C.S. § 9122.5(a.1).

Pennsylvania's Clean Slate Law and its expansion of criminal record clearing relief in the state have been supported not only by advocates but also by the business community. Employers recognize that reporting sealed records—non-convictions and old or minor convictions as selected by the state legislature—has significant negative impacts on workers, employers, and the overall labor market and economy across the state.[13] Employers supported Clean Slate in Pennsylvania, and later in many other states, because they recognized the need to expand their pool of workers to include hard-working and qualified individuals who had moved past their stale criminal records. In Missouri, more than 20 businesses and chambers advocated for Clean Slate through public testimony, statements, letters and media commentary. Mike Doner, the CEO of Flagger Force, headquartered in Hummelstown, Pennsylvania, submitted an op-ed in support of Maryland's Clean Slate legislation as a critical step in breaking down barriers to employment for those with a criminal

---

[13] *See* PA Chamber of Business and Industry, *Expanding Clean Slate: Good for Employers, Reentrants and Pennsylvania's Future Workforce* (last visited June 29, 2026),https://www.pachamber.org/media/7302/expanding_clean_slate_good_for_e mployers_reentrants_and_pennsylvanias_future_workforce/; Laura Chavez, *New Research: How Clean Slate Won in Pennsylvania and Utah — and What Other States Can Learn*, The Clean Slate Initiative (August 15, 2025), https://www.cleanslateinitiative.org/updates/how-clean-slate-won-in-pennsylvania-and-utah.

record and creating meaningful change in communities.[14] In Illinois, 10 businesses and chambers advocated in favor of the Clean Slate law signed by the Governor in January 2026.[15]

Employers also understood that by having the records removed from public view, they would not have to be as concerned about being held liable for hiring someone with a criminal record or liable for not having hired someone in violation of civil rights laws.

Employers committed to second chance hiring can still face challenges when hiring individuals with publicly available criminal records if it would require navigating complex regulatory restrictions and waiver processes. For example, JPMorgan Chase & Co. is committed to second chance employment but faced challenges in hiring due to federal regulatory barriers.[16] Prior to the passage of the Fair Hiring in Banking Act[17] in 2022, the Federal Deposit Insurance Act (FDIA) limited financial institutions' ability to hire people with specific types of conviction

---

[14] Mike Doner, "Clean Slate Legislation is Key to Removing Barriers to Employment and Strengthening Communities," Baltimore Post-Examiner (March 8, 2024), https://baltimorepostexaminer.com/clean-slate-legislation-is-key-to-removing-barriers-to-employment-and-strengthening-communities/2024/03/08

[15] Responsible Business Initiative for Justice, *2025 Impact Report*, https://www.rbij.org/impact.

[16] JPMorgan Chase & Co. Policy Center, *Giving People with Criminal Backgrounds a Second Chance* (last visited July 8, 2026), https://www.jpmorganchase.com/content/dam/jpmc/jpmorgan-chase-and-co/documents/jpmc-policycenter-overview-v1-ada.pdf.

[17] Pub. L. 117-263 (Title LVIII, Subtitle F, §§ 5861–5864).

records unless the agency issued a waiver, which relatively few candidates pursued because waivers can be time consuming and expensive. When criminal records are reported to employers during a background check, even those willing to hire a candidate with a record might find the process too challenging or costly to navigate.

Record clearing laws like Clean Slate take employers out of the difficult situation of having to decide whether someone should be able to work – the legislature and the courts have already made that decision. If the District Court's decision is allowed to stand, employers will be put in an impossible position of having criminal record information that has been deemed inaccessible and unusable by states reported to them as if it is still publicly available and usable – leading employers to unknowingly violate multiple state and federal laws.

In the years since Clean Slate has passed in Pennsylvania, it has automatically sealed millions of records and advocates around the state have further sealed thousands more records by petitions to courts across the state.[18] Clean Slate has been expanded three times by a divided legislature with wide bipartisan support to help more Pennsylvanians access relief, because it has been a wildly popular and effective public policy. Limited access relief has fundamentally changed the lives of hundreds

---

[18] PALawHelp.org, *Clean Slate 3.0 Enacted into Law - Allows Sealing of Some Old Felony Criminal Records* (Last visited June 29, 2026), https://www.palawhelp.org/resource/clean-slate-30-enacted-into-law-allows-sealing-of-some-old-felony-criminal-records.

of thousands of Pennsylvanians and their families, providing a pathway to stable employment and housing. The District Court's decision would completely undermine the success of these types of effective record clearing laws that have been gaining more traction across the country.

### ii. Bipartisan Support for Clean Slate Legislation Underlies the Nationwide Trend Towards Record Sealing Expansion, Including in States Within the Fourth Circuit.

Pennsylvania's Clean Slate law was the first of its kind, and in recent years, bipartisan momentum for automated sealing has grown in red, blue, and purple states alike. 13 states, including Virginia, and the District of Columbia, have now passed legislation to automatically seal eligible conviction records[19]. Missouri is also poised to become the 14th Clean Slate state as their legislature recently passed a bill to automatically seal certain conviction records with bipartisan support[20]. The bill is awaiting the Governor's signature[21]. Notably, among these states, both Democrat

---

[19] *See* The Clean Slate Initiative, *Clean Slate in States*, https://www.cleanslateinitiative.org/states (last visited June 8, 2026); *see also* Va. Code Ann. §§ 19.2-392.6, 19.2-392.7 (effective July 1, 2026) (providing for automatic sealing of qualifying convictions and the process for automatic sealing); D.C. Code § 16-805(a)(2), (c)(2) (providing for automatic sealing of qualifying misdemeanor convictions after the waiting period).

[20] Nicholas Phillips, "Clean-Slate Legislation in Missouri Sees Bipartisan Push," St. Louis Mag. (Apr. 15, 2025, 9:55 AM, updated Apr. 18, 2025), https://www.stlmag.com/news/solutions/clean-slate-missouri/.

[21] *See* C.C.S. S.S. S.B. 1421, 103d Gen. Assemb., 2d Reg. Sess. § 610.141.1(3), (6), .2-.4 (Mo. 2026) (truly agreed to and finally passed May 15, 2026); Complete Legislative Action History for S.B. 1421, Mo. Senate, https://www.senate.mo.gov/BillTracking/Bills/BillInformation?billId=8214&billPr

and Republican majority legislatures and governors have supported and passed Clean Slate legislation[22], putting approximately 18 million adults on a path to full or partial automated record sealing[23]. Additionally, traditionally conservative advocacy groups such as R Street have been proud supporters of these efforts alongside liberal criminal justice organizations like Center for American Progress[24]. This bipartisan movement to leverage technology in delivering bulk record sealing highlights the magnitude of the problem and the growing support for scalable relief.

The politically diverse enthusiasm for Clean Slate is mirrored on the Federal stage. In April 2025, Senators Lisa Blunt Rochester (D-DE) and Rand Paul (R-KY) in the Senate and Representatives McBath (D-GA-6) and Moran (R-TX-1) in the House introduced The Clean Slate Act to create the first-ever federal system to

---

efix=SB&billSuffix=1421&handler=Actions&year=2026 (last visited June 8, 2026); Lucas Caldwell-McMillan, 2026 Legislative Session Recap, Empower Mo. (May 19, 2026), https://empowermissouri.org/2026-legislative-session-recap/.

[22] See *Clean Slate in States*, supra note 19.

[23] The Clean Slate Initiative, *Population Estimates to Maximize Policy Impact: The Clean Slate Initiative Methodology for Estimating State Populations with a Record* (2024), https://www.cleanslateinitiative.org/data-methodology; *see also* The Clean Slate Initiative, *Our Data Dashboard*, https://www.cleanslateinitiative.org/data (last visited June 8, 2026).

[24] Nila Bala, *Why Conservatives Should Support Clean Slate Initiatives*, R Street Inst. (Oct. 31, 2019), https://www.rstreet.org/research/why-conservatives-should-support-clean-slate-initiatives/; *see also* Eric Levenson, "Inside the 'Clean Slate' Record-Sealing Movement Growing in Both Red and Blue States," CNN (May 30, 2026), https://www.cnn.com/2026/05/30/us/clean-slate-reform-movement; Center for American Progress, *Clean Slate*, https://www.americanprogress.org/topic/clean-slate/.

automatically seal certain low-level records.[25] Present at the press conference were Republican and Democrat lawmakers alongside conservative advocacy groups such as Conservative Political Action Conference (CPAC)'s Nolan Center for Justice and Unify.US, as well as centrist and liberal organizations such as Center for American Progress and the Brennan Center for Justice.[26]

Streamlining record relief also has bipartisan support in the community, particularly among those with records, as found in a recent survey of 800 people with arrest and conviction records in Pennsylvania, Utah, and Michigan (all states that have implemented some form of automated record sealing).[27] The survey found that people with records are politically diverse, and the challenges of having a record are universal across party lines.[28] Among respondents in Pennsylvania, 32% of respondents identify as Democrats, 29% Republicans, 25% Independents, 5% other, and 8% not sure, in Utah, 15% identify as Democrats, 35% Republicans, 41% Independents, 1% other, and 8% not sure and In Michigan, 35% identify as

---

[25] The Clean Slate Initiative, *Bipartisan Lawmakers Reintroduce Legislation to Advance Second Chances at Federal and State Levels* (Apr. 30, 2025), https://www.cleanslateinitiative.org/in-the-news/csa-fsa-intro-2025.
[26] *Id.*
[27] Laura Chavez, *The Impacts of Clean Slate Laws in Pennsylvania, Utah, and Michigan*, The Clean Slate Initiative (2024)*, available at*: https://www.cleanslateinitiative.org/research-data-publications/yougov-survey-report.
[28] *Id.*

Democrats, 31% Republicans, 26% Independents, 4% other and 6% not sure.[29] Nearly all respondents, Republican and Democrat, think it is important for individuals to have past arrests and convictions cleared from their records, given they meet specific criteria, like remaining crime-free for a period of time.[30] Two-thirds of respondents (67%) overall, 66% of Republicans and 72% of Democrats believe it to be "very" or "extremely important".[31]

Bipartisan support for record relief is unsurprising when coupled with research demonstrating the tangible benefits of record sealing to individuals and their communities. Qualitative research has shown that individuals with sealed records report reduced barriers to employment as well as psychological benefits.[32] In addition, studies of petition-based record sealing found significant increases in employment rates and real earnings, with wages increased by more than 22% within one year following expungement in Michigan, driven primarily by unemployed people finding work and underemployed individuals accessing better jobs.[33] The Michigan study also found that those who obtained expungements had extremely low rates of recidivism.[34]

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] J.J. Prescott & Sonja B. Starr, *Expungement of Criminal Convictions: An Empirical Study*, 133 Harv. L. Rev. 2460, 2510 (2020).

[34] *Id.* at 2514.

These findings complement recent research on the benefits of automated record sealing. Data from the survey cited above indicates that individuals eligible for automatic record sealing have already begun experiencing real improvements in their lives.[35] Nearly half (42%) reported improvement in work, employment, personal finances, or public assistance, 35% reported improvement in personal and family relationships, and 34% reported improvement in health, mental health, or self-esteem.[36]

An estimated 70 - 100 million, or 1 in 3 people in America have some kind of arrest or conviction record.[37] In the states within the 4th circuit, nearly 5.6 million people have either one or more arrest and/or conviction on their record, and among those, 4.3 million people's records include convictions.[38] That is 17% of the adult population in the 4th circuit.[39] Based solely on offense type, waiting periods, and any caps or limits contained in these states' laws, and not factoring in any discretionary factors (including payment of fines and fees), approximately 1.6 million people in the Fourth Circuit are likely eligible to have one or more

---

[35] Chavez, supra note 27.

[36] Chavez, supra note 27.

[37] Sentencing Project & Half in Ten, *Americans with Criminal Records: Poverty and Opportunity Profile* (2014), https://www.sentencingproject.org/app/uploads/2022/08/Americans-with-Criminal-Records-Poverty-and-Opportunity-Profile.pdf.

[38] The Clean Slate Initiative, *Population Estimates to Maximize Policy Impact: The Clean Slate Initiative Methodology for Estimating State Populations with a Record* (2024), *available at* cleanslateinitiative.org/data-dashboard.

[39] *Id.*

convictions sealed through either the petition-based or automated processes in their respective states.[40] 1.6 million people who, even after completing their sentences and remaining crime-free, will likely be denied a fair chance at jobs, safe housing, and educational opportunities until their convictions are successfully sealed and removed from background check reports.

The widespread benefits of record clearing policies and the strong bipartisan and business support for expanding access to record clearing underlie the importance of allowing state legislatures and state courts to determine when criminal records should no longer be publicly accessible and reportable, especially since federal law does not prohibit them from doing so and in fact federal legislation is underway to enact Clean Slate at the federal level.

### iii. Clean Slate and Other State Record Clearing Laws Will Be Undermined By the District Court's Interpretation of the FCRA.

Record clearing laws such as Pennsylvania's Clean Slate Law and those in the other states, including those in the 4th Circuit, are implemented through a collaborative process between the state's legislature and courts. Through the democratic process, the legislature codifies in law the process to remove certain criminal records from public view. The courts implement the removal under automatic and petition-based processes, making updates to its database and

---

[40] *Id.*

coordinating with data repositories located within law enforcement agencies. A court decision that allows background checking companies to report sealed or expunged records without running afoul of federal consumer protection laws in turn allows private companies to undermine the will of state legislatures and state courts. The District Court's decision is not supported by the text of the FCRA and would interfere with the Constitutional purview of the states to create lawful and critical public policy to address the significant problem of criminal records impeding access to economic opportunity.

## CONCLUSION

For the above reasons, the decision below undermines states' rights, puts states' economies and both employers and workers with criminal records at a disadvantage, and interfere with the important goals of overcoming criminal records as barriers to opportunities across the country. *Amici* urge this Court to overturn the decision below.

Respectfully submitted,
**AMICI CURIAE**

By: */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7570
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com

*Counsel for Community Legal
Services, The Clean Slate Initiative,
The Responsible Business Initiative
for Justice*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Counsel for *Amici Curiae* hereby certifies that:

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Local Rule 29(a).  The brief contains 5,505 words (as calculated by the word processing system used to prepare this brief), excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2.  This brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman style font.

Dated:  July 9, 2026                                        By: */s/ Kristi C. Kelly*